No. 47,646

STATE OF KANSAS, *Appellee,* v. LARRY D. NORWOOD, *Appellant.*

(535 P. 2d 996)

Opinion filed May 10, 1975.

*Leonard F. Watkins, Jr.,* of El Dorado, argued the cause, and *Russell Shultz,* of Wichita, was with him on the brief for the appellant.

*Stephen M. Joseph,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Keith Sanborn,* district attorney, and *Clifford L. Bertholf,* assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is an appeal from a criminal conviction of theft as defined by K. S. A. 21-3701. Appellant-defendant Larry Norwood and co-defendant Gary Bogguess were charged jointly in a two count information on the crimes of burglary (K. S. A. 21-3715) and theft (K. S. A. 21-3701 [*a*]). A joint trial was held and on June 12, 1972, the jury returned verdicts in which Norwood was found guilty of theft, but not guilty of burglary; and Bogguess was found guilty of burglary, but not guilty of theft. Motions for a new trial, filed by each defendant, were granted by the trial court. Their motions for separate trials were denied and defendants were again tried jointly, with Norwood being found guilty of theft and Bogguess guilty of burglary. Subsequent motions for a new trial or judgment of acquittal were overruled and Norwood perfected this appeal,

raising twelve points of error which he claims denied him his constitutional right to a fair trial.

This case arose out of the theft of various items of stereo equipment from a duplex apartment rented by Carl Davis, Fred Johnson, and Charles Ervin. The other apartment in the duplex was rented by Davis' sister, Ernestine Hollimon. Mrs. Hollimon testified that she returned to her home shortly before 8:00 o'clock on the evening of February 16, 1972. She heard "banging" noises next door and, assuming her brother was home, she went to his apartment. When she arrived, she almost "got run over" by Larry Norwood who was racing from the apartment with a speaker under each arm and some tape cartridges in his hand. She testified that as Norwood went by her she heard someone from the house ask, "Did you get the other speaker?" Mrs. Hollimon also stated that she saw two other persons standing in the doorway to the apartment, one of whom she later identified as co-defendant Bogguess.

A police officer arrived on the scene a few minutes later and Mrs. Hollimon told him she had seen Norwood and another man take the stereo equipment from her brother's apartment. The officer found Bogguess and another man outside the apartment and Mrs. Hollimon was able to identify Bogguess as the other person she saw taking the stereo equipment.

Carl Davis testified that on the day before the burglary both defendants had been in his apartment listening to music on the stereo that was later stolen. He further stated that he and his two roommates had gone out on the night in question, leaving the apartment unoccupied. When they returned, the back door had been broken open and several items of stereo equipment were missing.

Mrs. Hollimon testified she had known Norwood since high school and she had seen him often since then. She stated the last time she had seen Bogguess was when they were both in high school.

Norwood first claims he was prejudiced by various acts of misconduct on the part of both the trial judge and the prosecutor. Norwood contends the trial judge acted in such a manner that his bias in favor of the state was clearly apparent to the jury. At one point in his brief he states, "One evidence of his bias towards the state is evidenced in the fact that in his discreationary [sic] rulings were always such that the state benefited and the defendant lost. Such conduct in its self [sic] is sufficient to show partiality." The

argument is without merit. Ruling in favor of the state on procedural matters at trial is no more evidence of bias in favor of the state than would the mere fact of ruling for the defendant be evidence of partiality to the defendant. Ruling in favor of a party does not in itself indicate bias or partiality.

As specific evidence of judicial misconduct Norwood points to two segments of the trial in which the trial judge allegedly behaved in a biased manner. In the first instance he complains the trial judge assisted the prosecutor in framing a question to a witness. On direct examination of Charles Ervin the prosecutor asked him, "What was the value . . . to you of the Home unit and the speakers?" Defense counsel objected to the form of the question and the prosecutor was ordered to rephrase it. Despite repeated efforts to properly state the question, objections were sustained by the court. Finally, the trial judge said he would allow the question if the prosecutor would not use the word "price." After rephrasing the question in accord with the court's suggestion, the prosecutor was able to elicit testimony to the effect that in Ervin's opinion the stereo was worth $120.00.

The second example of alleged bias on the part of the trial judge occurred during the closing arguments. Norwood complains that whereas the defense counsel was admonished by the trial judge when he strayed into the area of punishment, the prosecutor was not similarly warned when his argument strayed outside the evidence.

A defendant in a criminal trial is entitled to a fair and impartial trial. This includes the right to a trial before a fair and unbiased judge. The purpose of a trial in a criminal case is to ascertain the truth or falsehood of the charges against the defendant, and it is a part of the duty of the trial judge to see that the full truth is developed by the evidence. (*State v. Jones*, 204 Kan. 719, 466 P. 2d 283.) In order to achieve this purpose we have held it to be proper for the trial judge to use whatever means that reasonably appear necessary, under the circumstances, to develop fully the truth of the matter in issue. Such conduct by the trial judge does not constitute ground for a new trial unless it appears his action is of such a prejudicial nature it would tend to reasonably influence the minds of the jury against the defendant, thus denying him the right to a fair and impartial trial. (*State v. Bean*, 179 Kan. 373, 295 P. 2d 600.)

In *State v. Atherton*, 151 Kan. 370, 100 P. 2d 63, we approved the trial judge's conduct in asking a witness "a few helpful questions designed to expedite the trial" touching on the subject of value. Similarly, in the instant case the trial judge assisted the prosecutor in phrasing a question as to value when confusion was created by general objections to the form of the question. Not only was no prejudice shown by defendant, but it appears the trial court's conduct was a highly commendable effort to expedite trial and develop the full truth. Our examination of the entire record satisfies us the complaint of defendant as to the actions of the trial court did not result in any prejudice to defendant's right to a fair trial.

We cannot agree with Norwood's contention that the prosecuting attorney was guilty of prejudicial misconduct. He complains of the prosecutor's remarks in his closing argument. At one point the prosecutor implied one of the state's witnesses, Mrs. Hollimon, was subjected to "a lot of harassment." Norwood claims any suggestion of harassment is without a basis in evidence and therefore improperly included in the closing argument. He also objects to the prosecutor's statement to the jury that, "This is your community, ladies and gentlemen. What you do here today in reaching your decision in this case is what we call justice."

It is true that misconduct on the part of a prosecutor by going outside the record in the heat of final argument may be so gross and flagrant as to deny the accused a fair trial and require a reversal. (*State v. Murrell*, 215 Kan. 10, 523 P. 2d 348; *State v. Kelley*, 209 Kan. 699, 498 P. 2d 87.) Yet, in the absence of a showing that the objectionable statement made by the prosecutor was injurious to the defendant and was likely to affect the jurors to his prejudice, we will not require the granting of a new trial. (*State v. Murrell*, supra.)

Norwood has failed to convince us the prosecutor's comments in any way prejudiced his right to a fair trial. At most, the statements concerning the harassment of a witness and the effect of a verdict on the community were improper statements, but not of such magnitude as to constitute prejudicial error. Accordingly, the trial court did not err in failing to grant a new trial or declare a mistrial as a result of the prosecutor's closing argument.

Norwood next contends the trial court erred in admitting rebuttal testimony of a state's witness when such testimony was no more than a restatement of his testimony in the state's case-in-chief.

The testimony was given by Detective Lewis Brown on rebuttal in response to the question of whether he had ever told Bogguess he was out to get Norwood. Detective Brown replied in the negative.

Rebuttal testimony is, generally speaking, evidence presented in denial of some fact which the adverse party has attempted to prove. (*State v. Freeman*, 195 Kan. 561, 408 P. 2d 612.) It is clearly within the discretion of the trial court as to whether rebuttal evidence is allowed, and the ruling of the court will not be ground for reversal unless it appears the discretion has been abused to the prejudice of the defendant.

The state's brief contains what is designated as a Supplemental Record on Appeal. The testimony reproduced therein purports to be evidence introduced by defendant to the effect that Detective Brown told Bogguess he was out to get Norwood. The state offers this segment of the transcript as justification for its later rebuttal testimony. The record contains no other testimony which related to Detective Brown's statement. Although there is no authorization in our appellate procedure for the filing of supplemental records in this manner, we are convinced the rebuttal testimony had no effect upon the guilt or innocence of defendant and we cannot assign prejudicial error in its introduction.

Norwood further complains the trial court erred in allowing the state to cross-examine him on matters which were incompetent, immaterial, and outside the scope of direct examination. During cross-examination the prosecutor asked Norwood where he had been between the hours of 10:00 and 12:00 p. m. The only response elicited was that he had been at the pool hall.

Questions asked on cross-examination must be responsive to testimony given on direct examination, or material and relevant thereto; and resolution of such issues resides in the sound discretion of the trial court, which will not be disturbed unless an abuse is shown. (*State v. Nirschl*, 208 Kan. 111, 490 P. 2d 917.)

On direct examination Norwood was questioned by his counsel as to his whereabouts between the hours of 7:00 and 10:00 p. m. on the night in question, and as to his arrest at midnight. By introducing evidence of his activities during these time periods, defendant opened up the question of his whereabouts during the two-hour time gap previously unaccounted for. Such an inquiry on cross-examination was clearly relevant, competent and logically related to Norwood's testimony on direct examination.

Norwood also complains the trial court erred when it allowed his prior trial testimony to be introduced by the state in its case-in-chief. In the prior trial, Norwood took the stand and testified he had been at home with his mother until after 10:00 p. m. In the instant trial the court reporter took the stand and read this testimony to the jury. Then Detective Brown testified Norwood told him on the day after the crime that he had spent the entire evening at the B & J Steak House. After the state rested its case the defense called Norwood to the stand and he testified he was not at the scene of the crime between the hours of 7:00 and 10:00 p. m. and that he was at the pool hall between 10:00 and 12:00 p. m. He did not testify, however, as to where he was at the time of the crime, although when his mother was called as a witness by the defense she stated he was home with her from 6:00 until 10:00 p. m.

Norwood argues his prior trial testimony was offered to impeach his credibility and as such it was inadmissible since he had not yet taken the stand. There is no question the prior testimony alone is exculpatory in nature and would not constitute an admission on his part. Yet, his former testimony was offered by the state in conjunction with an inconsistent statement he made to Detective Brown. Both statements were relevant to a material issue in the case; *i. e.*, his whereabouts during the time of the crime. In view of the fact these statements were inconsistent, we believe it was relevant as tending to show defendant's guilt. False exculpatory statements made by a defendant are admissible to show a consciousness of guilt and unlawful intent. (*United States v. Tager*, 481 F. 2d 97 [10th Cir. 1973].) In an early Kansas case this court stated:

". . . It is always competent to show the statements and claims made by a person charged with crime with reference thereto, and to show that such statements are false. The fact that a defendant in a criminal case resorts to falsehood is a circumstance which may, in connection with other facts in the case, tend to prove guilt." (*State v. Oliver*, 55 Kan. 711, 41 Pac. 954, p. 714.)

The former testimony of the defendant was properly admitted for the purpose approved herein and no error has been shown.

Norwood argues the trial court erred in instructing the jury regarding the use of prior testimony for impeachment purposes. Instruction No. 13 reads in part:

"The credibility of a witness may be attacked by: evidence that on some former occasion he or she testified or gave a statement inconsistent with his testimony in this case on a matter material to the issues.

". . . It is for the jury to decide whether or not that testimony or prior statement is inconsistent with testimony given by those witnesses in this case, and if so, you may consider evidence of this kind, in connection with all the other evidence, as it may have a bearing on impairing his credibility as a witness, that is, in deciding the weight and credit to be given the testimony of that witness."

Norwood waived his privilege not to be called as a witness and not to testify by voluntarily becoming a witness. So waived, his status as a witness became the same as any other witness. For the purpose of impairing his credibility any party may introduce "extrinsic evidence concerning any conduct by him and any other matter relevant upon the issues of credibility." (K. S. A. 60-420.) Although we hereinbefore stated the former recorded testimony was admissible for other reasons, we see no basis for not considering the evidence on the issue of credibility. We find no error in Instruction No. 13.

Norwood also reasserts his objection to Instruction No. 11 on aiding and abetting. The trial court gave the following instruction:

"You are instructed that under the law of the State of Kansas, anyone who counsels, aids, abets, or assists another or others in the commission of any crime, either by conspiring, counseling, advising, or assisting in any manner in the preparation, completion, or concealment thereof, is equally guilty with the one actually committing the crime without regard to the extent of their participation.

"You are, therefore, instructed in this case that if you find beyond a reasonable doubt that either defendant conspired, counseled, aided, abetted, advised or in any manner assisted others in the commission of the crime or crimes charged in the Information, as elsewhere defined in these instructions, then he, individually, is guilty of such crime as though he, by himself, without assistance, committed those crimes.

"In connection with this instruction, the jury is admonished not to speculate concerning whether or not either or both defendants could have been charged with other offenses arising out of the incident. Matters of that kind are solely the responsibility of the courts and prosecuting authorities."

The thrust of Norwood's argument on this point is that there was no basis in evidence for such an instruction since the co-defendant Bogguess was acquitted of theft and defendant Norwood was acquitted of burglary. He argues in order for such an instruction to be properly given it is necessary that there be some other person who could have been aided and abetted. This was impossible under the present circumstances, argues defendant, since Bogguess had already been acquitted of theft. Although he cites no supporting authority, Norwood concludes one cannot aid and abet another who has already been acquitted of the crime charged.

Norwood's position is in direct contradiction to K. S. A. 21-3205, which provides in subsection (3) thereof:

"A person liable under this section may be charged with and convicted of the crime although the person alleged to have directly committed the act constituting the crime lacked criminal capacity or has not been convicted or has been acquitted or has been convicted of some other degree of the crime or of some other crime based on the same act."

Under this statute it would be permissible to convict Norwood of aiding and abetting Bogguess for the crime of theft even though Bogguess had previously been acquitted of theft. The evidence shows Norwood, along with Bogguess and possibly two other persons, was seen coming from Carl Davis' apartment with stereo equipment. As they were leaving one of the group said, "Did you get the other speaker?" Based on this evidence it was proper for the trial court to give an instruction on aiding and abetting.

We cannot say the trial court erred in including the final paragraph of the instruction admonishing the jury not to speculate as to whether the defendants could have been charged with other offenses arising out of the incident. Considering this instruction in light of all the instructions given, we find no prejudice flowing from the trial court's instruction to the jury not to speculate on other charges.

Norwood next contends the trial court erred when it refused to grant separate trials to the defendants. Following the initial trial both defendants filed motions for separate trials which were subsequently denied. Norwood argues the facts have changed as a result of the first trial and a joinder that was proper before the first trial became improper afterwards. He claims by virtue of the acquittals in the first trial the two defendants could not have been involved in the same act or transaction.

The statutory guidelines for joinder of defendants are found in K. S. A. 22-3202 (3):

"Two or more defendants may be charged in the same complaint, information or indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting the crime or crimes. . . ."

The information under which the two defendants were originally charged alleged both Norwood and Bogguess were involved and participated in the same burglary and theft, at the same place and at the same time, and that they did it together. Despite the fact Norwood was acquitted of the burglary and Bogguess was acquitted

of the theft, the evidence and the allegations remain that both defendants were participating in the same act or transaction. Under these circumstances the defendants were properly charged in the same information under 22-3202.

Even if the defendants were properly joined under the same information, Norwood contends he should have been granted a separate trial pursuant to K. S. A. 22-3204, which provides the court *may* order a separate trial when requested by the defendant or the prosecuting attorney. This is a matter properly left to the discretion of the trial court. Norwood has failed to offer any proof of an abuse of that discretion and we conclude the trial court did not err in denying defendants' motions for separate trials.

Finally, Norwood contests the sufficiency of the evidence. On appellate review of a criminal conviction the test is not whether guilt was established beyond a reasonable doubt, which was a matter for the jury to decide, but whether there was a basis in the evidence for a reasonable inference of guilt. (*State v. Johnson,* 210 Kan. 288, 502 P. 2d 802.) It would serve no purpose to review the evidence beyond what has been disclosed in this opinion. It is sufficient to say there is a basis in the evidence for a reasonable inference of guilt.

We find no error of a prejudicial nature and the judgment of the trial court is affirmed.

FROMME, J., not participating.