No. 47,810

STATE OF KANSAS, *Appellee,* v. ELTON D. DONAHUE, *Appellant.*

(543 P. 2d 962)

Opinion filed December 13, 1975.

*James W. Wilson,* of Hodge, Wood & Wilson, of Wichita, argued the cause and was on the brief for the appellant.

*Robert L. Kennedy, Jr.,* Assistant District Attorney, argued the cause, and C⸱⸱t T. Schneider, Attorney General, *Keith Sanborn,* District Attorney, and Stⱱ ⸱hen M. Joseph, Assistant District Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendant-appellant (Elton D. Donahue), appeals from convictions by a jury of two counts of aggravated kidnapping (K. S. A. 21-3421), two counts of rape (K. S. A. 21-3502), two counts of robbery (K. S. A. 21-3426), and one count of aggravated sodomy (K. S. A. 21-3506).

The state's evidence established that on the evening of July 10, 1973, two Wichita State University coeds went to the Flicker Lounge, located near the university campus, to meet the boyfriend of one of the girls. The girls went to the lounge in an automobile owned by one of them and parked in the parking lot, at the rear of the lounge, about 8:30 p. m. They remained at the lounge until

about 11 p. m., when they left by the back door and walked to the parking lot. As they were proceeding to their automobile they passed three young black men who were loitering in the parking lot. After the girls had entered the automobile the three men approached the vehicle. The three men were later identified as the defendant, Elton D. Donahue, Anthony R. Garrett, and Donald G. Ponds. Garrett pointed a hand gun at the girl who was in the driver's seat and forced his way into the front seat. Donahue and Ponds entered the automobile on the passenger's side. One of the men told the girls that they only wanted to drive around for a while. One of the girls offered to give the men the automobile and their money if the men would let them go. The offer was refused.

Garrett drove the automobile away from the parking lot and after driving the streets of northwest Wichita for a short time parked the automobile in a vacant lot. At this point the girls offered the men their money, hoping they would be released. The men removed all of the money from the girls' purses. The girls were forced to undress, both girls were raped and one girl was forced to perform oral copulation on Donahue. The girls were then permitted to dress. The men then drove around with the girls for a short time, finally leaving the girls in the automobile near a school in northwest Wichita. The girls drove home and reported the occurrence to the Wichita Police Department, giving descriptions of the three men and their clothing.

As a result of police investigation the next day defendant Donahue, Garrett and Ponds were arrested. Shortly after his arrest Donahue was interviewed by Detectives Jerry Bullins and Beverly Artman at the police station. Defendant was advised of his constitutional rights and given a written statement thereof. Defendant signed a waiver of his rights in the presence of the detectives. Defendant agreed to talk with the detectives and stated that he knew nothing of the kidnapping-rape-robbery of the two girls because he was at home in the company of a friend—Carter Butler—during the evening in question.

Immediately after the interview with defendant, Detective Bullins went to the home of Carter Butler and inquired of him as to his activities on July 10, 1973. Bullins testified that Butler said that he had called Donahue about 4 or 5 p. m. on July 10; that Donahue stated that he was going out that evening with Donald Ponds to "mess around." Butler also told Bullins that he had spent the night

at his aunt's house and did not see Donahue at all. Butler was called as a state's witness at the trial.

The three men were tried jointly at a trial beginning December 10, 1973. Ponds and Garrett were convicted of two counts of aggravated kidnapping and two counts of rape. The jury was unable to reach any verdict on Donahue. Defendant was retried in January 1974 and found guilty as previously indicated and thereafter perfected this appeal. Ponds and Garrett also filed an appeal which is decided this day. (See *State v. Ponds and Garrett*, 218 Kan. 416, 543 P. 2d 967.)

In the first of three points specified on appeal defendant claims error in the admission into evidence of the testimony of Detective Bullins and Carter Butler contradicting defendant's statement that he had been with Butler on the evening in question.

Defendant argues that it was prejudicial error to admit the testimony of Bullins and Butler since he had not filed an alibi or taken the stand; and that he must have put his own credibility in issue by taking the stand before the admission of such evidence is permissible. Defendant asserts that the admission of such evidence contravenes K. S. A. 60-423 and 60-424, which constitutes our codification of the constitutional privilege against self-incrimination. Defendant advances the further argument that under K. S. A. 60-420, 60-421 and 60-422, he must first take the stand as a witness and place his own credibility in issue before it can be attacked in this manner. In support of this latter proposition defendant cites *State v. Gunzelman*, 210 Kan. 481, 502 P. 2d 705; *State v. DeLespine*, 201 Kan. 348, 440 P. 2d 572; and *State v. Motley*, 199 Kan. 335, 430 P. 2d 264.

Defendant's constitutional self-incrimination claim concerning his statement made to Detective Bullins is· without merit. The statement that he was with Butler was made after defendant had been fully advised of his constitutional rights and had executed a written waiver thereof. Defendant makes no claim that his statement was involuntary or coerced. Defendant's principal argument on this point is that an accused must first, by his own testimony, put his credibility in issue before it can be attacked. The cases cited by defendant (*Gunzelman, DeLespine* and *Motley*) are not in point. These cases stand for the often stated proposition that evidence of other offenses may not be elicited for the first time on cross-examination of the accused for the purpose of attacking his

character or credibility unless the accused has first introduced evidence of his good character or submitted evidence for the sole purpose of supporting his credibility. Defendant's statement in question here was exculpatory and had nothing to do with previous offenses. The issue presented was before this court in similar context in the recent case of *State v. Norwood*, 217 Kan. 150, 535 P. 2d 996. As in the case at bar, the statement in question was exculpatory in nature and offered by the state in conjunction with an inconsistent statement by Norwood to a detective. In the *Norwood* case Mr. Justice Owsley speaking for the court had this to say:

". . . Both statements were relevant to a material issue in the case; *i. e.*, his whereabouts during the time of the crime. In view of the fact these statements were inconsistent, we believe it was relevant as tending to show defendant's guilt. False exculpatory statements made by a defendant are admissible to show a consciousness of guilt and unlawful intent. (*United States v. Tager*, 481 F. 2d 97 [10th Cir. 1973].) In an early Kansas case this court stated:

" '. . . It is always competent to show the statements and claims made by a person charged with crime with reference thereto, and to show that such statements are false. The fact that a defendant in a criminal case resorts to falsehood is a circumstance which may, in connection with other facts in the case, tend to prove guilt.' (*State v. Oliver*, 55 Kan. 711, 41 Pac. 934, p. 714.)

"The former testimony of the defendant was properly admitted for the purpose approved herein and no error has been shown." (p. 155.)

In the instant case the statement of the accused concerned his whereabouts at the time of the crime. The testimony of Butler and Detective Bullins tended to show that the statement made by defendant was false and falls within the rule that when a defendant in a criminal case makes a false exculpatory statement evidence thereof is admissible to show consciousness of guilt and unlawful intent. (1 Wharton [13th Ed.], Criminal Evidence, § 215, pp. 458-459; *United States v. Tager*, supra; and *State v. Norwood*, supra.)

In connection with his first point defendant further contends that Butler was incompetent to testify under the provisions of K. S. A. 60-417, and thus Detective Bullins' testimony of what Butler told him earlier was not admissible under K. S. A. 60-460 (*a*) as an exception to the hearsay rule. Defendant extends this argument by asserting that since Butler at the time of the trial, was being held in the Larned State Hospital, this is prima facie evidence of incompetency; and, therefore, neither Butler's nor Bullins' testimony could be properly admitted. Defendant cites *State v. Poulos*, 196

Kan. 253, 411 P. 2d 694, cert. den. 385 U. S. 827, 17 L. Ed. 2d 64, 87 S. Ct. 63, in support of his argument. The record discloses that subsequent to July 10, 1973, but prior to trial, Butler had been sent to the Larned Hospital for treatment by the Sedgwick County Juvenile Court in connection with a charge pending against him in that court. There was no showing that Butler had been adjudicated insane or incompetent by any court.

Defendant misreads the thrust of the *Poulos* decision. The opinion points out that under K. S. A. 60-407 a witness is presumed to be competent to testify, and, therefore, his competency must be challenged and the burden of establishing incompetency rests on the challenger. Implicit in the trial court's admission of Butler's testimony is a finding that he was competent as a witness. There was no evidence of incompetency other than the mere fact that Butler was an inmate of the state mental institution. There is no claim that Butler did not understand questions put to him at trial. Under such circumstances the trial court's finding in this regard cannot be reversed. In *Holler v. Dickey Clay Mfg. Co.*, 157 Kan. 355, 139 P. 2d 846, this court held:

"The determination of the mental competency of a witness at the time he is produced for examination is addressed largely to the discretion of the trial court and its determination of such question will not be disturbed except for abuse of discretion." (Syl. ¶ 3.)

Concerning defendant's argument that the testimony was inadmissible on the ground that it did not fall within the hearsay exception spelled out by 60-460 (*a*) since Butler was present, testified and was available for cross-examination his statement concerning the whereabouts of defendant was also admissible through the testimony of Detective Bullins under the clear import of 60-460 (*a*). (See author's discussion of 60-460[*a*], 1975 Cumulative Supplement to "Kansas Code of Civil Procedure" by Judge Spencer A. Gard, pp. 156-159.)

Defendant next contends the trial court erred in admitting into evidence, over objection, certain clothing belonging to another defendant not on trial in the instant case. At a point in its case in chief, the state offered in evidence a pair of gold tennis shoes, identified by the two complaining witnesses, as having been worn by Garrett. The shoes were offered in conjunction with a black hat worn by defendant and a hand gun used to threaten the girls. Defendant's argument here is directed at the admission of the shoes. Defendant first raises the issue by motion for a protective order.

After hearing the background evidence concerning the shoes, the trial court ruled in pertinent part:

"THE COURT: On the question of the physical exhibits, the Court's ruling will be that where multiple defendants are charged in a crime, the physical exhibits pertaining to the crime, not the individuals, to the crime itself establishing the elements therefor are part of the res gestae of the whole situation and may be introduced."

It cannot be doubted that the victims' descriptions of the shoes, hat and gun, and their in-court identification of these exhibits strongly corroborated their identification of the defendant. The exhibits were relevant and of probative value. It has long been the rule of this court that the admissibility of physical objects is within the sound discretion of the trial court and is to be determined by it on the basis of their relevance and connection with the accused and with the crime charged. (*State v. Wilson,* 215 Kan. 437, 524 P. 2d 224; *State v. Robinson,* 203 Kan. 304, 454 P. 2d 527; and *State v. Joseph Little,* 201 Kan. 101, 439 P. 2d 383.) The shoes corroborated the victims' identification of Garrett as one of the assailants and in turn added credence to their identification of the defendant as another assailant. Defendant further says that some sort of limiting instruction should have been given by the trial court with respect to admission of the tennis shoes. In this connection, defendant cites *State v. Cantrell,* 201 Kan. 182, 440 P. 2d 580, cert. den. 393 U. S. 944, 21 L. Ed. 2d 282, 89 S. Ct. 315, for the proposition that where evidence is admissible as to one or more, but not to all of the defendants in a jury trial, then a limiting instruction should be given to restrict the jury's consideration. Defendant's reliance on *Cantrell* is misplaced. *Cantrell* was a joint trial of several defendants where certain incriminating statements by one of the defendants was held to be inadmissible against the others. The case did not involve the admission of physical evidence connected with the crime such as the shoes in the instant case. Moreover, defendant concedes that he failed to request a limiting instruction at trial.

Finally, defendant claims error concerning the action of the prosecutor in referring to a letter which was said to have been received by Carter Butler from defendant. When Butler was on the stand the prosecutor inquired of him whether he had received a letter from defendant to the effect "that if you help me this time, I'll help you next time." After objection by defendant's counsel and on inquiry of the state, the court was informed that the state

did not have the letter; thereupon the court sustained the objection and admonished the jury in these words:

"THE COURT: The last little outburst we will strike from the record and the jury will disregard it, please. You may cross examine."

Defendant contends that the court's admonition was insufficiently specific so as to instruct the jury to disregard the questions and answers concerning the letter. There were no other statements made or objected to in the interim between defendant's objection and the court's admonition to the jury. We believe an average panel of jurors would reasonably identify the statement to which the court's admonition referred. If the trial judge would have more specifically described the letter, the result would have only put more emphasis on it in the mind of the jurors, and, thus, compound the effect of the objectional remarks. We believe the trial court's admonition under the circumstances served the intended purpose and that the temporary reception of the objectionable testimony failed to result in prejudice to the substantial rights of the defendant. The prompt striking of an answer to an improper question, accompanied by an admonition to the jury, cures any error where it does not affirmatively appear that the temporary reception of the testimony resulted in prejudice to the substantial rights of the accused. (*State v. Watson*, 204 Kan. 681, 466 P. 2d 296.)

A careful examination of the record discloses no trial errors which would justify the granting of a new trial.

The judgment is affirmed.