NOT DESIGNATED FOR PUBLICATION

No. 120,733

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CORNELIUS T. ELLIS,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Opinion filed April 24, 2020.
Affirmed.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, *Derek Schmidt*,
attorney general, for appellee.

Before STANDRIDGE, P.J., LEBEN and BRUNS, JJ.

LEBEN, J.: Cornelius Ellis appeals the district court's finding that he violated his
probation terms by possessing drug paraphernalia. Although Ellis admits that he
possessed a Brillo pad wrapped in aluminum foil found under the insole of one of his
boots, he says the State failed to show that those items were drug paraphernalia. But three
officers testified that the items are used to smoke crack cocaine, Ellis admits that they can
be used for that purpose, and he had them hidden in his boot when he came back to his
residential correctional facility. That evidence supported a finding that the items were
paraphernalia, so we affirm the district court's decision to revoke Ellis' probation.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Ellis received probation following a conviction for possession of cocaine. That sentence was subject to a 42-month prison term that the district court could impose if it ever revoked his probation for violations.

Within a year after sentencing, Ellis had violated probation three times: once by using drugs, once by skipping substance-abuse treatment (and using alcohol and drugs), and once for missing probation appointments and violating several rules at the residential corrections facility where he was staying. Ellis served jail sanctions for each violation and had his probation extended by 18 months. One month after the third violation, the State alleged that Ellis had committed a fourth by possessing drug paraphernalia.

Three police officers described the events underlying the fourth violation at an evidentiary hearing. At the time of this violation, Ellis was required to spend each night at a residential corrections facility. He could leave during the day for approved activities, like work, but had to return at the end of each day. And on his return, he would be searched.

In the search that eventually led to this appeal, Deputy Andy Orozco found a Brillo pad wrapped in a burnt piece of aluminum foil with residue on it hidden under the insole of one of Ellis' boots. Based on Orozco's training and experience, he thought the items were drug paraphernalia used to smoke crack cocaine. At first, Ellis said that he didn't know what the items were and that the boots were his cousin's. Then he said he had bought the boots from a friend or neighbor at a yard sale. Orozco radioed for backup and gave Ellis a urinalysis, which came back negative for narcotics.

Deputies Trevor Marshall and Sara Sinnett responded to Orozco's backup call. They too believed that the items were drug paraphernalia based on their training and experience. The residue on the foil supported that belief, though a department policy prevented them from conducting a field test to identify what substances might be found in the residue.

Instead, Sinnett took the items outside to have them sniffed by her drug dog. She had trained the dog to detect meth, marijuana, cocaine, and heroin odors. When an item emitted those odors, the dog would alert by lying down and pointing its nose at the item. The dog occasionally alerted on an item not emitting an odor it had been trained to detect. To reduce these false alerts, Sinnett trained the dog weekly for eight hours and completed an annual certification program. She couldn't say exactly how accurate the dog was because she didn't have the dog's training records with her at the hearing. But Sinnett had recertified the dog about a month before it sniffed the items from Ellis' boot. The dog alerted when it sniffed those items, which Sinnett had placed on the ground along a brick wall outside the facility.

Ellis didn't present any evidence at the hearing. The district court found that the State had proved by a preponderance of the evidence that Ellis had violated a condition of his probation by possessing drug paraphernalia. The court revoked probation and imposed Ellis' underlying 42-month prison sentence, with one year of postrelease supervision. Ellis now appeals that decision.

ANALYSIS

Ellis argues that the State's evidence at the revocation hearing didn't support a finding that he had violated a condition of his probation by possessing drug paraphernalia. The State had to prove by a preponderance of the evidence that Ellis had violated a condition of his probation. That standard is less demanding than the beyond-a-

reasonable-doubt standard that applies in criminal cases. Here, the State needed only to prove that the facts necessary to show a violation were more probably true than not. Once a violation is established, we review the decision to revoke probation for abuse of discretion. Unless the district court has made a legal or factual error, we may find an abuse of discretion only when no reasonable person would agree with the court's decision. *State v. Lloyd*, 52 Kan. App. 2d 780, 782-83, 375 P.3d 1013 (2016).

Ellis challenges the district court's finding that he violated probation, not its decision to revoke probation once a violation was established. The district court found that Ellis possessed drug paraphernalia. That would violate a probation condition requiring him to obey Kansas laws because it's a crime to use drug paraphernalia or even to possess it with an intent to use it. K.S.A. 2019 Supp. 21-5709(b)(2). So for Ellis to have violated the probation condition that he obey Kansas laws, the court had to find (1) that the items in his boot were drug paraphernalia and (2) that he used them as drug paraphernalia or possessed them with an intent to use them as drug paraphernalia. Let's discuss those elements in order.

On the first element, Ellis says the items in his boot were not drug paraphernalia because they were designed for household use, not for consuming controlled substances. It's true that one factor that affects whether an item is drug paraphernalia is whether it has legitimate uses. K.S.A. 2019 Supp. 21-5711(a)(13). But just because Brillo pads and aluminum foil have legitimate uses doesn't prevent their use as drug paraphernalia. Drug paraphernalia includes all items that "are used[] *or* primarily intended or designed for use" in introducing a controlled substance into the human body. (Emphasis added.) K.S.A. 2019 Supp. 21-5701(f). So even though the "intended or designed" use of Brillo pads and aluminum foil isn't to help someone consume controlled substances, the statute still treats them as paraphernalia if they "are used" that way. K.S.A. 2019 Supp. 21-5701(f).

4

Ellis concedes in his brief on appeal that foil and Brillo pads may be used to smoke illegal drugs. And the dog's alert when it sniffed the burnt foil piece showed that someone *had* used the items that way. Ellis says the alert was unreliable because Sinnett couldn't confirm the dog's accuracy. But that goes to the weight of evidence, and the court could have found the alert reliable based on Sinnett's testimony about the dog's training and certification. Even without the alert, the officers' testimony that the items are often used to smoke crack cocaine supported a paraphernalia finding. In short, the State on the first element showed that the items in Ellis' boot were probably drug paraphernalia.

On the second element, recall that the State had to show that Ellis either used the items to consume a controlled substance or possessed them with an intent to do so. K.S.A. 2019 Supp. 21-5709(b)(2); *State v. McMannis*, 12 Kan. App. 2d 464, 467-68, 747 P.2d 1343 (1987). Ellis says this element wasn't met because his negative drug test result proves that he never used the items to consume a controlled substance.

Even so, the State showed that he possessed the items intending to use them for that purpose. That Ellis hid the items under the insole of his boot is strong evidence of his intent to use them to consume a controlled substance. See *State v. Keel*, 302 Kan. 560, 568, 357 P.3d 251 (2015). A reasonable inference from that conduct was that Ellis intended to avoid discovery of the items. Why else put the items there? If Ellis wanted to use them for some cooking or cleaning (assuming those were allowed activities in the residential correctional facility), he would not need to go to all the trouble of removing his boot insole, placing the items underneath, and covering them up. Someone who just wants to use common household products for ordinary purposes doesn't hide them in a boot.

Of course, Ellis never claimed to have possessed the items for legitimate uses. He offered no reason at all why he hid them. Instead, he made conflicting statements about

5

the boots not being his, which was more evidence of his guilty conscience. See *State v. Norwood*, 217 Kan. 150, 155, 535 P.2d 996 (1975).

Some of the State's evidence did weigh in Ellis' favor on intent. For example, Ellis' negative urinalysis may have made it less likely that he intended to use the items to consume illegal drugs. The same could be said about the officers' failure to test the residue on the foil. But that's not enough to outweigh the State's evidence on intent. The State needed to show that it was more probably true than not that Ellis intended to use the items to consume a controlled substance. It did so.

In sum, the State met its burden of proving by a preponderance of the evidence that Ellis had violated a condition of his probation by possessing drug paraphernalia. It showed that the Brillo pad and aluminum foil in his boot were drug paraphernalia, and that he possessed those items intending to use them to consume a controlled substance. We therefore affirm the district court's judgment.