NOT DESIGNATED FOR PUBLICATION

No. 128,904

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER SOEHNER,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sherman District Court; SCOTT SHOWALTER, judge. Submitted without oral argument. Opinion filed June 5, 2026. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., MALONE and ATCHESON, JJ.

PER CURIAM:  Christopher Soehner brings this direct appeal of his conviction of driving under the influence of alcohol, contending that law enforcement lacked reasonable suspicion to extend the traffic stop. After review, we affirm his conviction.

FACTUAL AND PROCEDURAL BACKGROUND

On October 21, 2022, around 9:20 p.m., Officer Karina Angelos with the Goodland Police Department stopped Soehner's vehicle because it had a defective tag light. Based on evidence collected from this stop, the State charged Soehner with one

1

count each of: (1) driving under the influence of alcohol, second offense (referred to as DUI); (2) operating a vehicle without an interlock device; and (3) driving with defective tail lights.

Before trial, Soehner moved to suppress any evidence obtained after his arrest because the arresting officer lacked reasonable suspicion to believe Soehner had committed or was committing a crime. The district court held an evidentiary hearing on this motion, at which Angelos was the only witness. Her testimony established the following.

Angelos stopped Soehner's vehicle because he had a defective tag light, but before she could make contact with him, she "observed unusual behavior" when he tried to get out of his car and come toward her patrol vehicle. Angelos ordered him to stay in his car, and then she approached to advise Soehner why she had stopped him. At that point, Angelos smelled the "odor of consumed alcohol" on Soehner, saw that he had watery and glossy eyes, and noticed that he was nervous.

Angelos asked for Soehner's license, registration, and proof of insurance. Soehner responded that he did not have his license on him because it had just recently been reinstated after being suspended, so Angelos took Soehner's information to verify his identity. Angelos asked Soehner if he had been drinking, and he denied it.

After Angelos collected that information, she asked Soehner if he wanted to see the faulty tag light for himself. Soehner responded that he did, and when he was exiting the vehicle, he "struck" her with the car door. She then asked Soehner again if he had been drinking, and he again denied that he had. Soehner inspected the tag light and then Angelos instructed him to get back in his vehicle while she ran his information.

2

But Soehner did not stay in his car. While Angelos was talking with dispatch, he exited his vehicle again. At this point, Angelos perceived Soehner's behavior as "unpredictable," so she had Soehner sit on the curb while Angelos finished talking to dispatch.

Dispatch informed her that Soehner had a restricted driver's license. Because Angelos could not find those restrictions, she asked Soehner what they were, and he responded that he was supposed to have an ignition interlock device on his vehicle. But Angelos saw that no ignition interlock device was on the vehicle. At this point Angelos suspected Soehner of driving under the influence and asked him to perform standard field sobriety testing. Soehner failed the field sobriety tests that he performed.

Angelos then requested Soehner's consent to a preliminary breath test, and Soehner responded that he most likely smelled of alcohol because he was a Type II diabetic. Angelos was familiar with diabetic emergencies because of her family history and advised Soehner that he "didn't need to blow into my PBT, but that . . . he was not free to go because one, either he was under the influence of alcohol, or two, he was having a diabetic emergency." He then advised that he was worried because he had consumed alcohol with coaches after the game he was coming from. The preliminary breath test was administered but its results were not admitted at the hearing because the State failed to establish a proper foundation.

Angelos arrested Soehner and transported him to jail, where he was given another breath test. Angelos' testimony ended there because the motion to suppress included only events up to Soehner's arrest.

The district court's written order denied Soehner's motion to suppress. That order summarized Angelos' testimony, yet had one discrepancy—the district court's factual findings stated that Soehner hit Angelos with his door when he exited the car to

3

participate in the field sobriety tests, but the only evidence—Angelos' testimony—was that Soehner hit her with the car door when her exited his vehicle to look at the tag light. The district court held that under the totality of the circumstances, the officer had reasonable suspicion that Soehner was driving under the influence. The district court emphasized the legality of the initial stop, the smell of alcohol, and the ignition lock restrictions in its assessment.

Soehner waived his right to a jury trial, and the case was tried to the bench on stipulated facts. One stipulated fact was that Soehner's blood alcohol content was .123, per the breath test at the jail. Based on the stipulated facts, the district court found Soehner guilty as charged.

The district court sentenced Soehner to 90 days in county jail which would be suspended upon his serving five days in jail, followed by 12 months' probation. The district court also ordered Soehner to pay fines and fees. His sentence and fines were stayed pending a decision on appeal.

He now timely appeals the denial of his motion to suppress.

DID THE DISTRICT COURT ERR BY DENYING THE MOTION TO SUPPRESS?

On appeal, Soehner argues the district court erred by denying his motion to suppress because Angelos lacked reasonable suspicion to extend the routine traffic stop into a DUI investigation because there was no evidence he was impaired by alcohol. The State counters that the totality of the circumstances—the smell of alcohol, Soehner's watery and glossy eyes, his erratic behavior, and his failure to have an ignition interlock device—provided reasonable suspicion that Soehner was driving under the influence.

4

*Preservation*

This case was decided at a bench trial on stipulated facts by the same judge that ruled on the motion to suppress, so Soehner did not make a contemporaneous objection to the now-challenged evidence at trial, as K.S.A. 60-404 generally requires. But a lack of objection at this trial does not preclude appellate review:

> "When a bench trial consists solely of stipulated facts, there is no opportunity for the defendant to make a contemporaneous objection to the admission of specific evidence. If the bench trial is conducted by the same judge who presided over a hearing on the motion to suppress that evidence, the lack of a contemporaneous objection does not bar our review of the ruling on the motion to suppress." *State v. Bogguess*, 293 Kan. 743, Syl. ¶ 1, 268 P.3d 481 (2012).

This issue was thus properly preserved for appeal.

*Standard of Review and General Guiding Principles*

When a defendant moves to suppress evidence, the State must prove by a preponderance of the evidence that the search and seizure was lawful. *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006). When reviewing a district court's ruling on a motion to suppress, an appellate court reviews the factual findings for substantial competent evidence and the court's ultimate legal conclusion de novo. *State v. Doelz*, 309 Kan. 133, 138, 432 P.3d 669 (2019). Similarly, "[w]hether reasonable suspicion exists is a question of law, and appellate courts review this question with a mixed standard of review, determining whether substantial competent evidence supports the district court's factual findings, while the legal conclusion is reviewed de novo." *City of Wichita v. Molitor*, 301 Kan. 251, 264-65, 341 P.3d 1275 (2015).

If there are no controverted facts, the reviewing courts apply a de novo standard to a motion to suppress. See *State v. Zwickl*, 306 Kan. 286, 293-94, 393 P.3d 621 (2017). But here, the parties disagree on the timeline associated with the suppression, and the district court's findings of fact vary from Angelos' testimony regarding at what point in the encounter Soehner hit her with his car door. Thus, we apply the bifurcated standard set out above.

Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021). In reviewing the factual findings, an "appellate court does not reweigh the evidence or assess the credibility of witnesses." *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). The State has the burden to prove the search and seizure were lawful. K.S.A. 22-3216(2); *State v. Cash*, 313 Kan. 121, 126, 483 P.3d 1047 (2021).

*Analysis*

There are generally four types of encounters between individuals and police: (1) voluntary or consensual encounters, (2) investigatory detentions, (3) public safety stops, and (4) arrests. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016). These encounters must not violate an individual's constitutional rights. The Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures. The United States Supreme Court has generally interpreted this prohibition to require law enforcement officers who seize or search an individual to either have a warrant or rely on a recognized exception to the warrant requirement. *State v. Sanders*, 310 Kan. 279, 285, 445 P.3d 1144 (2019) (citing *Riley v. California*, 573 U.S. 373, 382, 134 S. Ct. 2473, 189 L. Ed. 2d 430 [2014]).

When conducting an investigatory detention for a routine traffic stop, as here, a law enforcement officer may request a driver's license, proof of insurance, and vehicle registration; run a computer check; and issue a citation. *State v. Coleman*, 292 Kan. 813, 816, 257 P.3d 320 (2011). When the inquiry related to the initial purpose of the detention is completed, the officer must allow the person to resume his or her travels unless the officer has a reasonable suspicion of criminal conduct. *State v. Gonzales*, 36 Kan. App. 2d 446, 455, 141 P.3d 501 (2006). But when the responses of a detainee and the circumstances surrounding the stop give rise to suspicions of a crime unrelated to the initial traffic offense, the officer is free to resolve those suspicions by tailoring his or her response to the demands of the situation. *State v. Morlock*, 289 Kan. 980, 996, 218 P.3d 801 (2009).

The extension of a routine traffic stop into an investigatory detention for another crime must be supported by reasonable suspicion so as not to violate constitutional protections. "[I]nvestigatory detentions are constitutionally permissible if an objective officer would have a reasonable and articulable suspicion that the detainee committed, is about to commit, or is committing a crime." *Hanke*, 307 Kan. at 828. Reasonable suspicion is a lower standard than probable cause, and what is reasonable is dependent on the totality of the circumstances in the view of a trained law enforcement officer. *State v. Sharp*, 305 Kan. 1076, 1081, 390 P.3d 542 (2017). Still, reasonable suspicion requires more than a mere hunch. *State v. Lowery*, 308 Kan. 359, 366, 420 P.3d 456 (2018).

The reasonable suspicion analysis uses an objective standard, not a subjective standard based on the officer's personal belief. *Cash*, 313 Kan. at 130. "In determining whether reasonable suspicion exists, the court must judge the officer's conduct in light of common sense and ordinary human experience under the totality of the circumstances." *Sharp*, 305 Kan. at 1081. An appellate court defers to a trained officer's ability to distinguish between innocent and suspicious circumstances. 305 Kan. at 1081. To show reasonable suspicion for an investigatory stop, the State need not rule out the possibility

7

that the suspect is engaged in innocent conduct. See *Illinois v. Wardlow*, 528 U.S. 119, 125, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000).

Soehner does not question the legality of the initial stop. Instead, he challenges the extension of the traffic stop into a DUI investigation, arguing that with no indication of impaired driving, evidence of consumption of alcohol alone cannot justify a detention for a DUI investigation. Soehner relies primarily on three cases: *City of Hutchinson v. Davenport*, 30 Kan. App. 2d 1097, 54 P.3d 532 (2002); *State v. Mosier*, No. 123,715, 2021 WL 3573842, at *1 (Kan. App. 2021) (unpublished opinion); and *Chambers v. Kansas Dept. of Revenue*, No. 115,141, 2017 WL 1035442, at *1 (Kan. App. 2017) (unpublished opinion). Those cases examine the mere odor of alcohol and a defendant's admission to having consumed it. But the record here shows additional evidence before the officer extended the scope of the stop, as we explain below.

In DUI cases, reasonable suspicion is established when an officer has specific, articulable facts that a driver has been consuming alcohol to a degree that it may have impacted his or her driving. See *State v. Pollman*, 286 Kan. 881, 894-96, 190 P.3d 234 (2008). In *Pollman*, law enforcement officers extended the traffic stop based on the odor of alcohol, noncompliance with officers' directions, and Pollman's admission to having "a few beers." 286 Kan. at 894. The Kansas Supreme Court held that officers had reasonable suspicion to extend the stop to determine whether Pollman was driving while intoxicated because the totality of the circumstances supported a reasonable suspicion of a DUI. The court noted that "[t]he fact that the odor [of alcohol] was not particularly strong may weigh in the equation but does not erase reasonable suspicion" and declined to focus on whether the odor of alcohol alone created a reasonable suspicion that Pollman had committed a crime because more factors were present. 286 Kan. at 895-96.

This case is similar to *Pollman* and whatever differences there may be only strengthen the totality of circumstances supporting reasonable suspicion. Soehner smelled

like he had consumed alcohol and had glossy and watery eyes. Soehner, like Pollman, did not comply with the officer's directions and showed nervous and "unpredictable" behavior. And before Angelos requested Soehner perform field sobriety tests, she learned that he was required to have an ignition interlock device installed on his vehicle, but he had none. Soehner struck Angelos with his car door after Angelos collected his traffic information and asked Soehner if he wanted to see the faulty tag light for himself.

Twice, Soehner denied that he had been drinking. Then he gave inconsistent accounts as for why he smelled like alcohol. At first, he told Angelos that he most likely smelled of alcohol because he was a Type II diabetic, yet soon thereafter he told her that he had recently consumed alcohol. These demonstrably inconsistent or false accounts as to why Soehner smelled like alcohol are another factor pointing toward guilt. See *State v. Donahue*, 218 Kan. 351, 354, 543 P.2d 962 (1975) (defendant's resort to false explanations may be considered evidence of a guilty mind); *United States v. Stoney End of Horn*, 829 F.3d 681, 687 (8th Cir. 2016) (defendant's inconsistent explanations for otherwise inculpatory circumstances are themselves indicative of guilt). Based on all these factors, the officer had reasonable suspicion to believe that Soehner was driving while intoxicated.

The stipulated facts, viewed in totality, and together with the reasonable inferences arising from them, are sufficient to create reasonable suspicion that Soehner was driving under the influence of alcohol. Accordingly, the district court properly denied his motion to suppress.

Affirmed.

9