NOT DESIGNATED FOR PUBLICATION

No. 122,243

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

SHELBY DAWN JOHNSON,
*Appellee*.


MEMORANDUM OPINION

Appeal from Sumner District Court; R. SCOTT MCQUIN, judge. Opinion filed December 23, 2020. Affirmed and remanded.

*Kerwin Spencer*, county attorney, *Mitch Spencer*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Chrystal L. Krier*, of Wichita, for appellee.


Before BUSER, P.J., HILL and WARNER, JJ.


WARNER, J.: This case concerns the death of a seven-month-old child. The State charged the child's mother, Shelby Johnson, with her murder and other related crimes. In this interlocutory appeal, the State argues that the district court erred when it ruled a heated accusation by Johnson's then-boyfriend was inadmissible, both because it was an opinion as to Johnson's guilt and because the accusation's potential for undue prejudice substantially outweighed its probative value.

1

While this is a sad and difficult case, it is not the role of an appellate court to substitute our analysis for a district court's weighing of the prejudicial nature of evidence. Rather, we entrust this task to the sound discretion of the district court in its role as the trial's evidentiary gatekeeper and defer to the district court's assessment if it is reasonable. After carefully reviewing the record and the parties' arguments, we conclude the court did not abuse its discretion when it found the accusation was inadmissible. Thus, we affirm that decision and remand the case for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Because this appeal by the State was taken before the matter went to trial, the evidentiary record before us is limited. The record we do have consists largely of testimony of the State's witnesses during Johnson's preliminary hearing. That testimony provided the following account of the circumstances surrounding J.H.'s death and the State's subsequent decision to charge Johnson with her murder.

J.H. was seven months old when she died. She lived with her mother, Shelby Johnson. Although not J.H.'s biological father, Schuyler Hulett thought of J.H. as his daughter and was listed as the father on J.H.'s birth certificate. Johnson and Hulett had two other young children—a five-year-old son and a nine-year-old daughter.

Johnson and Hulett did not live together and were not married at the time of J.H.'s death. Normally when Johnson would stay at Hulett's house, J.H. would sleep in a portable crib in Hulett's living room. But on March 31, 2018, the baby slept on a pallet made of blankets and pillows on the living room floor. The couple put J.H. to bed in the late evening and went to sleep in Hulett's bedroom. The two other children slept in a different bedroom. J.H. slept through the night.

2

Around 7:40 a.m. the next morning, Johnson got up to feed the baby. Johnson later told police officers that J.H. did not appear very hungry at that time and consumed little formula from her bottle. Johnson then put J.H. to bed again on the pallet and went back to Hulett's room to sleep.

Hulett informed the investigators that he got up between 8:30 and 9 a.m. to have coffee and give J.H. a bottle. He picked up the partially consumed bottle from the living room but did not check on the baby. Hulett went outside to his car to retrieve Easter baskets for the children and then made a new bottle of formula using warm water from the sink. When he was walking from the kitchen to J.H.'s pallet, his five-year-old son came out of the bedroom where he had been sleeping. Hulett found J.H. in her bed with a burp rag over her mouth, unresponsive and not breathing. When Hulett removed the cloth, he saw that she had vomit around her mouth.

Hulett picked up J.H. and hollered at Johnson to call 911, which she frantically did. (Though Hulett initially told an investigating officer that his son came out of his room before Hulett saw that J.H. was injured, he later testified that the children were awoken by his screams.) Hulett then attempted to perform CPR on the baby, applying compressions on J.H.'s chest and blowing in her mouth. When his efforts proved futile, Hulett decided not to wait for the ambulance, got in his car, and sped to the hospital.

At the hospital, doctors noted that J.H. was "Code Blue"—not breathing and without a pulse—and suffering from severe swelling of the brain. After CPR proved ineffective, J.H. was intubated and placed on a ventilator; the medical staff soon discovered that her skull was fractured in three places. J.H. also had a large hematoma on the right side of her head and retinal hemorrhages—"blotchy areas of bleeding"—in the back of both of her eyes. One of the doctors speculated that J.H.'s injuries were likely the result of three severe, shearing force traumas and/or some type of whiplash injury to the brain and could not have been the result of merely being dropped. It was further

3

discovered that J.H. had fractured ribs and soft tissue hemorrhages around those fractures. These were potentially caused by Hulett's application of chest compressions, but the injuries to J.H.'s ribs also showed signs of healing, indicating some of the rib injuries may have occurred at least a week prior to the head injuries that ultimately caused J.H.'s death.

Officers from the Wellington Police Department interviewed Johnson and Hulett, attempting to find out how J.H. had been so grievously injured. Both parents were distraught and neither had any explanation for the injuries: Johnson reported she had gotten up to feed J.H., put her back to bed, and went back to sleep herself. Hulett described waking up to check on J.H. about an hour later and finding J.H. in her bed, without a pulse and not breathing. Johnson informed an officer that she and J.H. did not live with Hulett but they would come visit on days she was off work. She also stated that J.H. had never been injured before and had only ever fallen over while trying to stand up.

J.H. was kept on life support at the hospital for several days before she passed away on April 5, 2018. The autopsy reported that J.H. had suffered contusions on both sides of her head, a hematoma on the lower jaw, two fractures—both more than 2 inches in length—on the right side of the skull, a 2 1/2-inch fracture on the back of the skull, a dense epidural hemorrhage, and hemorrhages in both eyes.

About a week after J.H.'s death, one of Hulett's neighbors reported to the police that he had overheard a part of an argument between a man and a woman coming from Hulett's house on April 11, 2018, at around 11 p.m. The only words the neighbor heard were a man yelling, "You killed my fucking baby!" The neighbor did not decipher any other part of the argument, did not hear any of what the woman said, and did not hear any response to the man's accusation. Three days later, the neighbor reported the argument to the police.

As a result of the neighbor's report of this yelled accusation and the surrounding investigation, the State charged Johnson with two counts of felony murder (with underlying crimes of child abuse and aggravated endangering a child), one count of second-degree murder, one count of child abuse, and one count of aggravated endangering a child.

The neighbor who had reported overhearing the yelled accusation later moved away and was not called as a witness at the preliminary hearing. Johnson did not testify at the preliminary hearing, but Hulett did. When the prosecutor asked Hulett about the argument on April 11, Hulett testified that he and Johnson went out drinking that evening and got into a loud argument when they arrived home. Hulett recalled being very drunk and angry with Johnson, eventually yelling, "You killed my fucking baby!" Hulett testified that he believes Johnson killed J.H. because he was not responsible for the death. But he admitted that he "never witnessed her do anything wrong to that baby" and "never [saw] her lay a hand on her." He stated that his accusation was made out of frustration— "[m]ore just anger and trying to realize and figure it out myself."

After hearing this evidence, the district court noted that it was not permitted to make credibility assessments at the preliminary hearing stage. The court bound Johnson over for trial because, under the evidence presented, there were "only two people" who could have committed the act leading to J.H.'s death, and Hulett "denied he did it."

About a week before the scheduled trial, the district court held a hearing on Johnson's motion in limine. During that hearing, the court voiced an evidentiary concern that had not yet been raised by either party: the admissibility of Hulett's April 11 accusation. The court observed that a witness is not usually permitted to provide an "opinion as to the guilt or innocence of the defendant." And the court distinguished Hulett's accusation that Johnson killed J.H. from a situation where a witness denies his or

5

her own guilt. Based on this reasoning, the court informed the parties that evidence of Hulett's accusation would not be admitted at trial.

The next day, the State filed a motion asking the court to reconsider its ruling. The State indicated that it sought to present evidence of Hulett's accusation through three avenues—testimony regarding the neighbor's report to the police, testimony from Hulett himself, and testimony from an FBI agent involved in the child-abuse investigation. The State explained that this agent, who did not testify at the preliminary hearing, interviewed Hulett about the argument. The agent also interviewed Johnson, and she apparently denied that Hulett had accused her of killing J.H. or that the April 11 argument ever occurred. The State noted that it intended to call Hulett as a witness. And the State intended to have the neighbor and the FBI agent "available to testify," to alleviate any hearsay or confrontation issues.

For all three avenues of presenting evidence of the accusation, the State argued that "[t]hese conversations happened within a couple weeks of the child's death" and before any charges were filed. According to the State, there were only two adults in the house when J.H. was injured, and given the circumstances surrounding Hulett's accusation, the State believed it "more likely that [Hulett] was not the one who caused the injuries." The State also believed Hulett's accusation was evidence that J.H.'s death was "not simply an accident." The State explained that the accusation was "relevant to show that [Hulett] had no role in causing the child's death" and was "a significant consideration in who was charged with the crime." Finally, the State argued that rulings finding evidence unduly prejudicial should be rendered "sparingly" because the law "favors the admission of otherwise relevant evidence."

At the hearing on the State's motion, the State argued that all three iterations of Hulett's accusation—through the neighbor's report, through Hulett, and through the investigating FBI agent—were highly relevant to its case against Johnson and "were a

6

huge factor" in its decision to bring charges against her. The State argued that both Hulett's recollection of his accusation and the neighbor's memory of overhearing Hulett's statement were relevant because they showed that Hulett was not the killer: "[O]nly a person who did not kill a baby would accuse the other parent of killing the baby." And it argued the FBI agent should be allowed to testify about Johnson's denial of the accusation and argument to show Johnson was not being forthright with the officers during the investigation. The State asserted that Hulett's accusation was "determinative of the case" because it showed that "one of two people present when a baby was killed did not kill the baby. By inference, the only person left that could [have] killed the baby is the defendant."

The court disagreed with the State's analysis. Regarding Hulett's proposed testimony, the district court observed that Hulett had not seen or heard Johnson hurt J.H. Instead, he made the accusation because he was drunk and angry and believed that she was responsible. The court concluded that Hulett's accusation was therefore an improper opinion as to Johnson's guilt. The court found the neighbor's testimony was hearsay and would only be admissible if Hulett's accusation was admissible. And finally, the court found the FBI agent's proposed testimony was inadmissible evidence of specific instances of conduct to prove a character trait of dishonesty. After issuing its rulings, the court observed:

> "[T]his evidence has bothered me from the preliminary hearing, to be real honest. It's been on the back burner. I've been thinking about it. . . . I worked all weekend to try to find some basis whereby this was admissible or clearly inadmissible. I think you could search the rest of your life and never find another case with these facts. You can't make this stuff up. I've done the best I can with it. I just don't think it's admissible evidence."

At the close of the hearing, the State indicated that it would be pursuing an interlocutory appeal of the court's ruling under K.S.A. 2019 Supp. 22-3603.

7

Two days later—and before the State filed any notice of appeal—the district court issued a memorandum opinion further explaining its decision. The court first discussed the admissibility of Hulett's accusation generally, with a three-part analysis:

- Hulett's accusation against Johnson was not an admission by Johnson, as there is no evidence as to how she responded; the accusation was the only part of the argument the neighbor overheard.

- "If Hulett's accusation is not relevant as the predicate for a tacit admission by the accused, then it is nothing more than a statement of Hulett's opinion as to Johnson's guilt." The court noted that lay opinions are only admissible under K.S.A. 2019 Supp. 60-456(a) if they are "'rationally based on the perception of the witness,'" and Hulett "did not see Johnson harm their baby."

- Quoting *Hunt v. State*, 48 Kan. App. 2d 1023, Syl. ¶ 4, 301 P.3d 755 (2013), the court noted: "'[W]itness testimony expressing an opinion on a defendant's overall guilt or innocence is inadmissible as a matter of law because the defendant in a criminal trial has the right to have the jury determine from the evidence whether the defendant is guilty or not.'"

The court then weighed the probative value of Hulett's accusation against its potential for undue prejudice. In so doing, the court analyzed the State's position that the accusation was "strongly indicative of Johnson's guilt" since it tended to rule out Hulett as a suspect. The court noted that

> "upon analysis, the court believes that this evidence's importance to the [S]tate is not in its high level of relevance, but in its great potential for undue prejudice. The evidence offers an easy shortcut to a conclusion of guilt that avoids the difficult process of an analysis of the physical evidence and witness testimony by adopting the easy two step

8

analysis offered by the [S]tate, to-wit: Hulett credibly denied his guilt, so the only other suspect must be guilty. How can anyone say that the jury could not fall for this trap during their deliberations when this court fell for this same error in logic in binding the defendant over for trial at the preliminary hearing[?]"

The court also disagreed with the State's position that the evidence was "highly relevant":

"The substance of the argument between Hulett and Johnson is largely unknown. Only Hulett's accusation was heard. Perhaps Johnson accused him first leading him to loudly accuse her. Without further context, it cannot be said with any certainty that Hulett had no reason to lie when he accused Johnson of killing their baby. Logically, Hulett's accusation is of questionable relevance, and its relevance is outweighed by its potential for unfair prejudicial effect."

The court thus ruled that the various evidence of Hulett's accusation was inadmissible, both because it was improper opinion evidence of Johnson's guilt and because its potential for undue prejudice substantially outweighed its probative value. The State then filed this interlocutory appeal.

DISCUSSION

District courts serve as evidentiary gatekeepers. District court judges—who observe firsthand a case's pretrial development and preside over trials—are in the best position to "make credibility, authenticity, and admissibility determinations." See *Savadjian v. Caride*, 827 Fed. Appx. 199, 204 (3d Cir. 2020) (unpublished opinion). For this reason, district courts "have broad discretion in deciding what evidence is relevant, reliable, and helpful to the trier of fact." *Humetrix, Inc., v. Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001).

A district court's rulings on the admissibility of evidence are often made in the thick of trial. But a court may also exclude evidence before trial when (1) the evidence

9

would ultimately be inadmissible and (2) a pretrial ruling is preferable to a ruling during trial because the mere mention of the evidence at trial may cause unfair prejudice or confusion. *State v. Shadden*, 290 Kan. 803, Syl. ¶ 3, 235 P.3d 436 (2010). Our Kansas Supreme Court has noted that a pretrial ruling excluding evidence may be appropriate, among other reasons,

> "because the introduction or mention of the evidence may cause unfair prejudice, confuse the issues, or mislead the jury; the consideration of the issue during the trial might unduly interrupt and delay the trial and inconvenience the jury; or a ruling in advance of trial may limit issues and save the parties time, effort, and cost in trial preparation." 290 Kan. at 816.

When considering whether to make a pretrial ruling on the admissibility of evidence, a district court balances "these advantages to a pretrial ruling" against the recognition that a court "is usually in a better position during trial to assess the value and utility of evidence and its potential prejudice." 290 Kan. at 816.

Appellate courts review the first of these considerations—the admissibility of the evidence—as we do any other evidentiary ruling, based on the contours and the court's application of the law in question. See 290 Kan. at 815, 817-18; see also *State v. Miller*, 308 Kan. 1119, 1138, 427 P.3d 907 (2018) (a district court abuses its discretion if no reasonable person would take the view it adopted or if the decision is based on an error of law or fact). The second consideration—whether a pretrial ruling is preferable to a determination at trial—is part of a district court's "inherent authority to manage the course of trials" and thus "rests in the [court's] discretion." *Shadden*, 290 Kan. at 816, 818. This means we will only overturn the court's judgment to issue a pretrial ruling on admissibility if no reasonable person would support that timing. See 290 Kan. at 818; *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). For both steps in this analysis, the party challenging the court's evidentiary ruling bears the burden of showing error. See *Miller*, 308 Kan. at 1138.

10

When considering whether evidence is admissible, a district court first must determine whether it is relevant—that is, whether it is both material and probative. Evidence is material if the fact it proves "has some real bearing on the decision in the case." *State v. Torres*, 294 Kan. 135, 139, 273 P.3d 729 (2012). And evidence is probative "if it furnishes, establishes, or contributes toward proof." *State v. Coones*, 301 Kan. 64, 78, 339 P.3d 375 (2014). In other words, the evidence must tend to make a fact of consequence more or less probable than it would be without the evidence.

Once relevance is established, the court applies constitutional, statutory, and common-law evidentiary rules to determine whether the evidence should be admitted or excluded. *State v. Gunby*, 282 Kan. 39, 47, 144 P.3d 647 (2006). The "law in this state favors the admission of otherwise relevant evidence." *State v. Miller*, 284 Kan. 682, 690, 163 P.3d 267 (2007). Yet even when evidence is relevant and may otherwise be admissible, a district court has discretion to exclude it from trial if "its probative value is substantially outweighed by its potential for producing undue prejudice." *Miller*, 308 Kan. at 1167; see also *State v. Boysaw*, 309 Kan. 526, 540, 439 P.3d 909 (2019) (citing cases that recognize the district court's gatekeeping role includes a weighing of evidence's probative value against its prejudicial effect).

With these principles in mind, we turn to the State's arguments. The State sought to admit evidence of Hulett's accusation—"You killed my fucking baby"—in three ways: (1) through Hulett's testimony, (2) through testimony regarding the neighbor's report to the police, and (3) through the testimony describing Johnson's denial of that accusation (and surrounding argument) to an FBI agent. The district court ruled that each avenue was inadmissible, finding:

(1) Hulett's accusation was inadmissible opinion evidence that invaded the province of the jury by commenting on Johnson's guilt. The court further

11

found that even if this evidence were otherwise admissible, its potential for undue prejudice substantially outweighed its probative value.

(2) Evidence of the neighbor's report was hearsay and only admissible if Hulett's utterance was otherwise admissible, which it was not.

(3) Evidence that Johnson may not have been forthright with the FBI investigator about the accusation and argument was inadmissible because specific instances of conduct—Johnson's denial—used solely to prove a character trait—Johnson's dishonesty—are inadmissible.

On appeal, the State asserts that each of these rulings was erroneous. But at oral argument, the State indicated that if Hulett's accusation is found to be inadmissible, it could not—and would not—introduce evidence of that accusation through the "backdoor" of the neighbor's report or the investigator's interview. Rather, it is the accusation that the State is primarily interested in introducing, as—in the State's view—it tends to simultaneously exclude Hulett as a suspect and prove Johnson's guilt. Thus, the dispositive issue before us is whether the district court erred when it found the evidence of Hulett's accusation inadmissible.

1. *Hulett's accusation was relevant.*

We begin, as all evidentiary analyses must, with relevance. Evidence is relevant when it is probative of a material fact. K.S.A. 60-401(b); *Coones*, 301 Kan. at 78. The assessment of evidence's probity is generally a matter entrusted to the judgment of district courts. This is because the determination as to whether evidence tends to prove a consequential fact is a decision that requires a district court to "'draw on its own experience, knowledge, and common sense in assessing whether a logical relationship exists between proffered evidence and the fact to be proven.'" *State v. Reid*, 286 Kan.

12

494, 508, 186 P.3d 713 (2008) (quoting Mueller & Kirkpatrick, Evidence Practice Under the Rules § 4.1, p. 226). In contrast, whether a fact to be proved is material is a question of law to which we give no deference on appeal. *Coones*, 301 Kan. at 78.

Here the district court found that the evidence was relevant. After reviewing Hulett's testimony at the preliminary hearing and the State's proffered explanation, we agree that Hulett's accusation has a logical bearing on a material fact. Taken at face value, Hulett's accusation was relevant to determining who caused J.H.'s injuries. This is particularly true if the State is correct that only two people could have done so.

But we also are mindful of the district court's observation that the State overstated the probity of Hulett's accusation. See *State v. Reid*, 286 Kan. 494, 507-09, 186 P.3d 713 (2008) (noting that probativeness determinations are matters entrusted to a district court's discretion). The State has repeatedly argued that Hulett's statement was "strongly indicative of [Johnson's] guilt." But the accuracy of the State's position relies on a stack of other inferences and unknowns. There is no testimony, beyond Hulett's statements at the preliminary hearing, explaining the context of the overheard argument. Hulett testified that he directed his accusation at Johnson, but Johnson denied that he did so. If he did direct the accusation at Johnson, there is no evidence as to what occurred before that accusation or how she responded; the neighbor reported that he only heard Hulett's words during the argument.

And Hulett conceded that he never saw Johnson hurt J.H. Instead, he testified he made the accusation while he was drunk and trying to figure out what had happened. However unlikely the State may think it is that Hulett lacked a motive to make a false accusation in the midst of a private argument, it cannot be denied that the probity of Hulett's accusation hinges on the credibility of someone who, at the time, was also a suspect. Thus, the district court reasonably found that evidence of Hulett's accusation, though relevant, was not—as the State argues—"determinative of the case."

2. *The district court did not abuse its discretion when it found that Hulett's accusation was an impermissible opinion as to Johnson's guilt.*

Having concluded that evidence relating to Hulett's accusation was relevant to the State's case against Johnson, we turn to the district court's ruling that the accusation was nevertheless an inadmissible opinion as to Johnson's guilt.

Under K.S.A. 2019 Supp. 60-456(a), the district court may allow a witness who is not an expert to offer opinions or inferences if the judge finds the opinions or inferences are rationally based on the perception of the witness and helpful to the jury to provide a clearer understanding of his or her testimony. The district court has "broad discretion" to determine whether to allow evidence under this statute. *State v. Lowrance*, 298 Kan. 274, 293, 312 P.3d 328 (2013). An appellate court reviews a ruling on the admissibility of opinion evidence "under an abuse of discretion standard." 298 Kan. at 293.

A few evidentiary standards guide the contours of our analysis. *First*, although K.S.A. 2019 Supp. 60-456(a) refers to "testimony in the form of opinions or inferences," courts have applied the statute's standards to evidence other than witness testimony. See, e.g., *State v. Love*, 305 Kan. 716, 725, 387 P.3d 716 (2017) (observing that allegations in a civil lawsuit for wrongful death are inadmissible in a criminal trial for murder because the civil suit is "equivalent to [the plaintiff]'s opinion," which is subject to the standards set forth in K.S.A. 2019 Supp. 60-456); *State v. Jones*, 202 Kan. 31, 42, 446 P.2d 851 (1968) (applying expert opinion standards to evaluate admissibility of scientific evaluation of firearm conducted outside of court). Thus, the fact that Hulett's accusation occurred outside of court does not automatically exclude it from the evidentiary considerations that circumscribe the admissibility of opinion evidence.

*Second*, opinion evidence that is otherwise admissible should not be excluded merely because it embraces the ultimate issue or issues to be decided by the trier of fact. K.S.A. 2019 Supp. 60-456(d). At the same time, Kansas courts have emphasized that the admissibility of such evidence is not automatic. Rather, when evidence is offered containing an opinion on an ultimate fact—such as who may have committed the offense alleged—that evidence "is admissible only insofar as the opinion will aid the jury in the interpretation of technical facts or when it will assist the jury in understanding the material in evidence." *State v. Steadman*, 253 Kan. 297, 304, 855 P.2d 919 (1993).

*Third*, even if an opinion would be otherwise admissible under K.S.A. 2019 Supp. 60-456, "a witness cannot testify that in his or her opinion the defendant is guilty." *Hunt v. State*, 48 Kan. App. 2d 1023, 1034, 301 P.3d 755, *rev. denied* 298 Kan. 1202 (2013). Such testimony "invades the jury's role to determine guilt or innocence based on the totality of the evidence presented at trial," 48 Kan. App. 2d at 1034, and is "inadmissible as a matter of law." *State v. Drayton*, 285 Kan. 689, 701, 175 P.3d 861 (2008). Thus, while a district court generally has broad discretion to determine the admissibility of opinion evidence, a court "has no discretion as to whether to allow a witness to express an opinion on the guilt or innocence of the defendant." 285 Kan. 689, Syl. ¶ 8.

Turning to the case before us, the State first questions whether Hulett's accusation was opinion evidence. The State points out that the accusation was made in the context of a heated argument, not as dispassionate opinion testimony at trial. See *State v. Mathis*, 281 Kan. 99, 108, 130 P.3d 14 (2006). According to the State, the value of that accusation was not that Hulett believed Johnson to be at fault for J.H.'s death, but rather that Hulett did not cause the child's death. In other words, the accusation is important because of the inference that Hulett did not commit the crime—an inference rendered credible because his accusation arose in the context of a private argument that he did not expect would be overheard, before any charges were filed.

We observe that the State's efforts to introduce evidence of Hulett's accusation through multiple avenues, often without the benefit of Hulett's explanation, belie the State's argument. Such a strategy tends to emphasize the substance of the accusation itself—"You killed my fucking baby"—rather than Hulett's motivation. But even if it is a resulting inference, and not the substance of Hulett's accusation, that the State believes to be relevant and compelling, that inference depends entirely on the substance of the accusation—Hulett's assertion that Johnson was responsible for J.H.'s injuries. And Hulett testified at the preliminary hearing that his accusation was based on his belief, speculation, or inference rather than on any direct knowledge of what actually occurred. See Black's Law Dictionary 701 (11th ed. 2019) (defining "opinion evidence" as "[a] witness's belief, thought, inference, or conclusion concerning a fact or facts").

Hulett's accusation is thus distinguishable from the witness' "excited response" in *Mathis*, which the State cites in its brief. 281 Kan. at 108. In that case, the victim's grandmother exclaimed at the hospital when she learned that the child had been seriously injured—but before the child died—that the defendant "done killed the baby." 281 Kan. at 108. The grandmother testified about this statement at trial without any objection. On appeal, the defendant claimed for the first time that testimony about the grandmother's statement should have been excluded as an improper opinion on the defendant's guilt of felony murder. The Kansas Supreme Court disagreed, finding her statement was an "excited response" to seeing the injured child rather than an "opinion at the time of trial of the defendant's guilt." 281 Kan. at 108. And the court emphasized the lack of contemporaneous objection to the testimony—meaning the district court never had the opportunity to determine the admissibility of the evidence in question. 281 Kan. at 108.

Here, however, the district court did have that opportunity to exercise its judgment and found that Hulett's accusation was opinion evidence. The record supports this conclusion. Hulett did not witness Johnson harm J.H. Nor was his accusation an excited utterance made concurrently when he learned of the child's injuries. See *State v. Rowe*,

16

252 Kan. 243, 250, 843 P.2d 714 (1992). Instead, according to his testimony at the preliminary hearing, his accusation was based on his denial that he caused J.H.'s injuries and his belief that Johnson was the only other person—besides their other two young children—who had the opportunity to do so. While his accusation may have been rationally based on his perception of the facts, the district court did not err in finding the accusation was nevertheless opinion evidence within the meaning of K.S.A. 60-456(a).

The conclusion that Hulett's accusation was opinion evidence does not necessarily render that accusation inadmissible, however. The State argues that the district court should have allowed the utterance into evidence because (1) it was inferred from Hulett's perceptions and (2) the timing and circumstances of Hulett's utterance would be helpful to the jury in evaluating Hulett's anticipated testimony at trial that he did not harm J.H. See K.S.A. 2019 Supp. 60-456(a)(1), (2). But this argument swings wide of the district court's critical finding—that Hulett's accusation is inadmissible because it impermissibly opines on Johnson's guilt.

Hulett's accusation, viewed through the lens of his preliminary-hearing testimony, accused Johnson of "killing" J.H. On the one hand, Johnson was not merely charged with "killing" the child, though that is one of the elements of the felony murder with which she was charged. See K.S.A. 2019 Supp. 21-5402(a)(2). Hulett did not opine on whether the acts giving rise to J.H.'s death were done intentionally (though the State interpreted the accusation to mean J.H.'s death was "not simply an accident") or whether that death resulted from child abuse or aggravated endangerment. Thus, Hulett's accusation was not in the strictest sense an opinion regarding Johnson's guilt for those specific crimes. On the other hand, there was no question that J.H. had suffered severe injuries and those injuries led to her death; the crucial question to be resolved at trial was whether Johnson was the person who caused those injuries. In this way, Hulett's opinion went to the heart of Johnson's guilt or innocence. As the district court explained at the hearing, the

accusation "offers an easy shortcut to a conclusion of guilt that avoids the difficult process of an analysis of the physical evidence and witness testimony."

The line differentiating whether a witness provides an opinion on an ultimate issue to be considered by the jury (which may be admissible) or expresses an opinion on a person's guilt or innocence (which is inadmissible as a matter of law) is not always clear. But appellate courts entrust the district court with the discretion to draw that line and defer to the district court's decision if it is reasonable. We only overturn a district court's determination when no reasonable person could agree with its ruling. Compare *Steadman*, 253 Kan. at 304 (district court abused its discretion when it admitted officers' testimony that, based on their investigation, defendant was guilty of the crime and others were not); and *State v. Jackson*, 239 Kan. 463, 470, 721 P.2d 232 (1986) (district court abused its discretion when it permitted witnesses to testify as to child victim's credibility and their opinions that the defendant molested the child), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016); with *Hunt*, 48 Kan. App. 2d at 1034 (district court's determination that testimony as to witnesses' "perceptions and beliefs" shortly after a murder as to whether defendant killed the victim "did not invade the jury's role" was not an abuse of discretion).

In the end, it is not the role of an appellate court to substitute its judgment for the district court's reasonable exercise of its discretion. We find that a reasonable person could agree with the court's deliberative analysis and thoughtful conclusion that Hulett's accusation invaded the province of the jury and opined on Johnson's guilt. See *Lowrance*, 298 Kan. at 295 ("While others might disagree with the trial judge, if reasonable persons could agree it cannot be said that the trial judge abused his discretion."); *Curtis v. Freden*, 224 Kan. 646, 649, 585 P.2d 993 (1978) ("While the excluded testimony might very well have been admitted by the trial court, we cannot say it was an abuse of discretion to refuse the opinion testimony [in question]."). The district court did not err when it excluded evidence of Hulett's accusation.

3. *The court did not abuse its discretion when it found the probative value of Hulett's accusation was substantially outweighed by its potential for undue prejudice.*

Following its ruling at the pretrial hearing, the district court also found in its memorandum decision that even if the various evidence relating to Hulett's accusation were otherwise admissible—Hulett's testimony, the neighbor's report, and Johnson's conversation with the FBI agent—the court would nevertheless exclude the evidence because its potential for undue prejudice substantially outweighed its probative value. In particular, the court observed that Hulett's accusation, though of limited probative value, would tempt the jury to short-circuit its fact-finding role and instead convict Johnson because Hulett said she was responsible.

As a preliminary matter, the State argues that we should disregard the district court's memorandum decision because it was entered after the court ruled from the bench that Hulett's accusation was inadmissible. But the court issued that decision only two days after the hearing on this evidence, days before the State filed its notice of appeal and weeks before the appeal was docketed. The State offers no reason why the court should not have been permitted to clarify its ruling. Accord *Connell v. State Highway Commission*, 192 Kan. 371, 376, 388 P.2d 637 (1964) ("A trial court has inherent power to review its own proceedings to correct errors or prevent injustices. The power to reconsider a ruling in a case resides in the trial court until a final judgment or decree is issued."). Indeed, there would be little judicial economy in an appellate court turning a blind eye to the district court's alternative explanation as to why the evidence was inadmissible, only to have the district court again exclude the evidence on remand.

We thus turn to the court's weighing of the evidence's probity and prejudice. "Assessing the probative value of [proffered evidence] and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment." *United States v. Abel*, 469 U.S. 45, 54, 105 S. Ct. 465, 83 L. Ed. 2d 450 (1984). This is

"particularly true" when it comes to the "'on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant.'" *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 384, 128 S. Ct. 1140, 170 L. Ed. 2d 1 (2008) (quoting 1 S. Childress & M. Davis, Federal Standards of Review § 4.02, p. 4-16 [3d ed.1999]).

This is a close question. But like many judgments that must be rendered during the course of a case, the weighing of evidence's probity versus its prejudice is a matter entrusted to the discretion of a district court. Appellate courts do not second-guess these determinations if they are reasonable—that is, if any reasonable person would agree with the court's assessment. Indeed, if we did so, we would be required to consider countless issues on appeal without the benefit of the district court's experience or contextual knowledge. Given the relative vantage points of district and appellate courts, the wisest course is to defer to district courts' reasonable exercises of discretion. See *Miller*, 308 Kan. at 1167.

Under the facts of this case, the district court did not abuse its discretion in finding the value of the evidence of Hulett's accusation was substantially outweighed by its potential for undue prejudice. Undue or unfair prejudice is "an undue tendency to suggest decision on an improper basis." Fed. R. Evid. 403, Advisory Committee's Notes to 1972 Proposed Rules; see *Boysaw*, 309 Kan. at 540-41 (noting that Kansas courts employ a weighing similar to Rule 403). The court reasonably concluded that even if Hulett's accusation was not a direct opinion on Johnson's guilt, a jury nevertheless could merely accept Hulett's accusation instead of considering all the evidence at trial. The court's candid admission that it had fallen prey to just such a temptation at the preliminary hearing underscores the gravity of its concern.

The court did not abuse its discretion when it found this very real potential for undue prejudice substantially outweighed the evidence's probative value. And given the

nature of Hulett's accusation, the district court did not abuse its discretion in ruling that evidence was inadmissible before it could be presented to the jury at trial.

Because the district court did not abuse its discretion when it ruled Hulett's accusation was inadmissible, we need not consider the district court's rulings regarding the State's other efforts to discuss that accusation at trial. In fact, the only basis the State offers as to the admissibility of the neighbor's report is K.S.A. 2019 Supp. 60-460(a), which only applies if "the statement would be admissible if made by declarant while testifying as a witness." Thus, we do not consider whether the court erred in excluding evidence regarding the neighbor's report to the police that he overheard Hulett's accusation (but no other portion of the argument).

We also need not analyze in detail the court's exclusion of evidence pertaining to Johnson's denial of the accusation or argument to the FBI investigator. The district court found that this evidence was an inadmissible effort to use a specific incidence of Johnson's conduct to prove her general disposition of dishonesty. See K.S.A. 60-422(d); see also *State v. Wetrich*, 49 Kan. App. 2d 34, 41, 304 P.3d 346 (2013) (quoting *State v. Penn*, 41 Kan. App. 2d 251, 201 P.3d 752 [2009]) ("'[A] witness's credibility may be attacked by showing the witness has character traits for dishonesty or lack of veracity, but those traits may only be proven by opinion testimony or evidence of reputation. Those traits may not be proven by specific instances of the witness's past conduct.'"). We observe, however, that K.S.A. 60-422(d) requires the exclusion of evidence when it is "relevant *only* as tending to prove a trait of [a person's] character." Here, the State indicated that it was not seeking to offer the evidence to show Johnson's dishonesty generally, but to show why the prosecutor ultimately believed Hulett's version of events and decided to charge Johnson. See Fed. R. Evid. 608, Advisory Committee Notes to 2003 Amendments (noting that proof of specific instances of a witness' untruthfulness may be considered for grounds other than character, such as bias or prejudice); *Longus v. United States*, 52 A.3d 836, 850 (D.C. App. 2012) (bias includes witness' motive to lie).

21

Nevertheless, as the State has acknowledged on appeal, this evidence is predicated on its ability to discuss—and an assumption of the accuracy of—Hulett's accusation. And even if evidence of Johnson's interview with the FBI agent were otherwise admissible, the district court found that such evidence, as explained by the State in its proffer, was inadmissible because the probative value of Hulett's accusation was substantially outweighed by its potential for undue prejudice.

The decision to exclude relevant evidence before trial is not to be taken lightly. But neither is the district court's responsibility to act as a gatekeeper, allowing admissible evidence while excluding unduly prejudicial evidence that invades the province of the jury. Our review of the record shows the district court here understood the gravity of its gatekeeping role when it decided to exclude evidence of Hulett's accusation against Johnson—a decision to which we defer as a reasonable exercise of the court's discretion. We affirm the district court's pretrial exclusion of that evidence and remand the case for further proceedings consistent this opinion.

Affirmed and remanded.

* * *

BUSER, J., dissenting: In the early morning hours of April 1, 2018, a seven-month-old infant, J.H., was brutally killed. Only two adults, Shelby Johnson and Schuyler Hulett, were present at the crime scene. Based on direct, expert, and circumstantial evidence, the State's prosecution theory is that Johnson killed her infant daughter.

I dissent from the majority opinion because the district court erred as a matter of law in excluding important, admissible evidence that a jury is entitled to consider in arriving at its verdict regarding Johnson's guilt or innocence.

22

## THE IMPROPER PROCEDURE EMPLOYED BY THE
## DISTRICT COURT TO EXCLUDE EVIDENCE

At the outset, the extraordinary procedure employed by the district court in excluding evidence that Hulett yelled at Johnson, "You killed my fucking baby!" (hereinafter, "the accusation") without prior notice and sua sponte deserves mention because it set the stage for several errors of law that resulted in this interlocutory appeal.

My colleagues observe: "Because this appeal by the State was taken before the matter went to trial, the evidentiary record before us is limited." Slip op. at 2. I disagree. The evidentiary record is limited because the district court, without notice to the parties, ruled sua sponte on the issue of the admissibility of the accusation at a pretrial hearing held five days before the scheduled trial. Importantly, prior to the district court's ruling, Johnson did not object to the accusation evidence at the preliminary hearing, in her motion in limine, or during the hearing on that motion. In fact, prior to the district court's unexpected ruling, during the 15 months the criminal case was pending, Johnson never sought to preclude or limit any testimony by Hulett, Matt Brown (Hulett's neighbor), or Federal Bureau of Investigation (FBI) Agent Derek Velazco.

The Assistant County Attorney promptly objected to the district court's surprise announcement, stating, "[C]ertainly I had no notice that we were going to be debating this today. . . . I certainly did not perceive that as being part of what was the motion that was filed for today. . . . I've been completely blindsided, Judge." Despite the lack of notice to the parties and the sua sponte nature of the district court's remarks, the district judge ruled the accusation was "irrelevant evidence that I don't intend to let in at trial."

The next day, the State filed a motion seeking reconsideration of the district court's ruling excluding the accusation evidence, noting that prior to November 14, 2019, "the [S]tate had no idea that such testimony could be rendered inadmissible for any reason,

23

especially since it was not even objected to at the preliminary hearing and no pretrial motion had been filed to exclude it." Only three days later, and the day before the scheduled trial, the district court held a hearing to reconsider its ruling, which it ultimately declined to do.

As a consequence, the district court predicated its ruling on facts mentioned in the complaint and evidence presented at the preliminary hearing held 11 months earlier when the State did not have notice of any objections by Johnson or the court regarding the admissibility of the accusation evidence. Especially troubling is that Brown and FBI Agent Velazco—two principal witnesses involved in the accusation evidence—did not testify at the preliminary hearing. As a result, their anticipated trial testimony was limited to the complaint and generalized proffers made during argument following the district court's surprise ruling.

One of the perils of the district court's sua sponte approach can be seen in the majority's assessment that "the accuracy of the State's position relies on a stack of other inferences and *unknowns*." (Emphasis added.) Slip op. at 13. Mirroring the district court's complaints, my colleagues discount the State's arguments:

> "There is no testimony, beyond Hulett's statements at the preliminary hearing, explaining the context of the overheard argument. Hulett testified that he directed his accusation at Johnson, but Johnson denied that he did so. If he did direct the accusation at Johnson, there is no evidence as to what occurred before that accusation or how she responded; the neighbor reported that he only heard Hulett's words during the argument." Slip op. at 13.

Of course, the reason there are so many unknowns is that the district court's surprise ruling was made without providing the State with notice of the claimed infirmities in the admissibility of the accusation evidence, and an opportunity to present testimony, including two critical witnesses with information about the accusation evidence. I am unwilling to prejudice the State for evidentiary omissions when the district

court's handling of this issue was manifestly unfair because its ruling was unforeseen and peremptory.

Lastly, this case underscores our Supreme Court's admonition that "advantages to a pretrial ruling must be balanced against the reality that a district court is *usually in a better position during trial* to assess the value and utility of evidence and its potential prejudice." (Emphasis added.) *State v. Shadden*, 290 Kan. 803, 816, 235 P.3d 436 (2010).

## THE ACCUSATION EVIDENCE IS NOT AN INADMISSIBLE LAY OPINION

Given that the district court and my colleagues agree the accusation evidence is relevant, the next inquiry is whether admission of the challenged evidence complies with constitutional, statutory, and common-law evidentiary rules. *State v. Gunby*, 282 Kan. 39, 47, 144 P.3d 647 (2006). The district court found the accusation evidence was "nothing more than a statement of Hulett's opinion as to Johnson's guilt." In reaching this conclusion, the district court cited K.S.A. 60-456(a) for the proposition that "[a] lay opinion is only admissible if it is 'rationally based on the perception of the witness.'" According to the district court, because Hulett did not actually see Johnson injure the baby, the heated accusation he directed at Johnson was simply a "baseless opinion." The majority agrees with the district court's legal conclusion that the accusation evidence is an impermissible lay opinion as to Johnson's guilt. Slip op. at 14. I disagree on several grounds.

First, Hulett's accusation is admissible as fact evidence, not opinion evidence. One of the purposes of the State offering the accusation evidence is not to establish the truth of the matter asserted that, in Hulett's lay opinion, Johnson killed the infant, but to establish the truth of the matter asserted that, in fact, *Hulett did not kill the infant.* Assuming the jury adopts the State's theory of the case that either Johnson or Hulett killed J.H., Hulett's accusation directed at Johnson, in the privacy of his home where the

25

crime occurred, is competent evidence tending to show that he did not kill J.H. In other words, like Hulett's sworn testimony at the preliminary hearing that he did not kill J.H., his accusation made to Johnson may be considered his pretrial denial of killing J.H. In this way, because the accusation evidence is not offered to prove the truth of the matter asserted that, in Hulett's lay opinion, Johnson killed J.H., but that Hulett, in fact, did not kill the infant, the pretrial accusation evidence is just as admissible as Hulett's trial testimony in establishing that he did not kill J.H. A limiting instruction from the district court regarding the appropriate use of the accusation evidence could inform and guide the jury in its consideration of this evidence.

Of course, it is up to the jury to decide whether the State's "two suspects" theory is valid or whether someone else killed J.H. or if the infant died accidentally. But under the State's two suspects theory, the accusation evidence is admissible not as lay opinion evidence of Johnson's guilt but as fact evidence by the other suspect, Hulett, that he did not commit the crime. In this context, the evidence is offered as fact evidence which is relevant, material, and admissible. Moreover, given that the accusation was made a few days after J.H.'s death, in private, in his own residence, to his longtime girlfriend with whom he has two other children, and who was the only other adult present at the scene of J.H.'s killing, Hulett's accusation exhibits the indicia of trustworthiness.

Second, Hulett's accusation is also admissible as lay opinion testimony. Under K.S.A. 2019 Supp. 60-456(a), the district court may allow a witness who is not an expert to offer opinions or inferences if the judge finds the opinions or inferences are rationally based on the perception of the witness and helpful to the jury to provide a clearer understanding of his or her testimony.

The district court concluded the accusation evidence was impermissible opinion testimony because the opinion was not rationally based on the perception of the witness:

26

"Hulett testified that he did not see Johnson harm their baby. He testified that he only made the accusation because he was drunk, angry, and wanted to force the issue."

More accurately, Hulett testified at the preliminary hearing: "I thought if I pressured her in a way of—not intimidation—but like true letting her know, hey, that I was upset about it, we need to figure this fuck out. That's kind of where I was." This testimony was corroborated by information in the complaint that Hulett had admitted to Agent Velazco that "he did not actually see [Johnson] hurt the child but *he had come to that conclusion* which is why he had that yelled at her." (Emphasis added.)

Was Hulett's opinion that Johnson killed J.H. rationally based on his perception? Despite acknowledging that "[Hulett's] accusation may have been rationally based on his perception of the facts," slip op. at 17, my colleagues still conclude the district court did not err in its finding that Hulett's opinion or inference was not "rationally based on the perception of the witness." K.S.A. 2019 Supp. 60-456(a)(1).

In the district court's estimation, because Hulett did not actually observe Johnson injure their infant daughter, his opinion was not based on his perception. But the district court has a mistakenly restricted understanding of the meaning of perception. As defined in Black's Law Dictionary, "perception" means "[a]n observation, awareness, or realization, [usually] based on physical sensation or experience; appreciation or cognition." Black's Law Dictionary 1371 (11th ed. 2019).

As thoroughly detailed in the majority opinion, at the time J.H. was injured, Hulett knew that he and Johnson were the only adults present in Hulett's residence; that J.H. was healthy and uninjured late in the evening when Johnson and Hulett went to sleep in a bedroom next to the living room; that before retiring the couple placed the infant on blankets and pillows on the living room floor; that Johnson stated she had awakened and given J.H. a bottle with a small amount of formula about 7:40 in the morning; and that

27

Hulett awakened only 50 to 80 minutes later to find J.H. with vomit around her mouth, not breathing, unresponsive, and having recently sustained terrible skull and brain injuries that resulted in her death. Moreover, by his own account, Hulett also knew that he did not kill the infant.

It is an understatement to observe that with this fund of personal knowledge Hulett had sufficient awareness or realization based on his experiences and cognition to formulate a lay opinion that Johnson had killed J.H. Having rationally arrived at this conclusion, it makes sense that, in delivering his accusation, Hulett was attempting to pressure Johnson into admitting what he perceived to be true—that she had killed J.H. In short, contrary to the findings of the district court and my colleagues, Hulett's opinion was firmly based on a foundation consisting of his perceptions regarding the circumstances he personally experienced at or about the time J.H. was killed.

Third, Hulett's accusation was not an inadmissible opinion on the guilt or innocence of Johnson. Preliminarily, I agree with the majority that "a witness cannot testify that in his or her opinion the defendant is guilty." Slip op. at 15 (quoting *Hunt v. State*, 48 Kan. App. 2d 1023, 1030, 301 P.3d 755, *rev. denied* 298 Kan. 1202 [2013]); see K.S.A. 2019 Supp. 60-456(a). That is because witness testimony expressing an opinion about a defendant's overall guilt or innocence invades the right of a criminal defendant to have the jury determine from the evidence whether the defendant is guilty. *Hunt*, 48 Kan. App. 2d at 1030-31.

But as my colleagues candidly concede, Hulett's accusation did not opine that Johnson committed any crime, was guilty, that her actions were intentional, or resulted in child abuse or endangerment. It is common knowledge that many children are tragically but accidentally killed by a parent without the parent being guilty of any crime. Just because Hulett was angry at Johnson for killing J.H. does not mean he was expressing an opinion that she was guilty or criminally liable for her actions.

28

Moreover, K.S.A. 2019 Supp. 60-456 is typically applied in cases where a witness testifies in court to an inadmissible opinion on the guilt or innocence of a criminal defendant. See *State v. Drayton*, 285 Kan. 689, 701, 175 P.3d 861 (2008) ("[T]he district court had no discretion on whether to allow Detective Otis to express his opinion on Drayton's credibility or on his guilt or innocence."); *State v. Steadman*, 253 Kan. 297, 304, 855 P.2d 919 (1993) (murder and robbery convictions reversed because two detectives testified to their opinion that the defendant was guilty); *State v. Jackson*, 239 Kan. 463, 470, 721 P.2d 232 (1986) ("[W]e think it was error for the trial court to permit the witnesses to testify and tell the jury that in their opinions . . . the defendant committed the acts of molestation with which he was charged."). In the present case, however, the accusation evidence occurred prior to trial and without any apparent testimonial purpose.

Fourth, Hulett's accusation is admissible as an emphatic and/or emotionally charged spontaneous statement made by a witness prior to trial regarding a defendant's conduct that is later charged as a crime. In *Hunt*, our court explained the critical difference between inadmissible opinion testimony regarding the defendant's guilt and an admissible witness' pretrial statement that the witness believed the defendant committed the act. 48 Kan. App. 2d 1023, Syl. ¶ 4.

In *Hunt*, two brothers of the defendant were asked at trial regarding their pretrial beliefs regarding whether the third brother killed their mother. One brother testified at trial about his pretrial interview with a Kansas Bureau of Investigation agent wherein he said the defendant could have been involved in the murder. The brother explained that his opinion was based on the defendant's behavior and some comments the defendant made to him. The other brother testified at trial that, at the time of his mother's funeral, he believed the defendant was responsible for her death.

29

Our court determined that trial testimony about the witnesses' pretrial statements and beliefs was different than inadmissible opinion testimony regarding the defendant's guilt, explaining that

> "the testimony provided by [the witnesses] was limited in both scope and time to the perceptions and beliefs they held while the police were investigating the murder in the few days after their mother's body had been discovered. As a result, this testimony did not invade the jury's role to determine guilt or innocence based on the totality of the evidence presented at trial. . . . Given the narrow context in which [the witnesses] actually testified regarding their opinions, we are not persuaded that the opinion testimony at issue here invaded the jury's role to determine guilt or innocence based on the evidence presented at trial." 48 Kan. App. 2d at 1034.

Similar to *Hunt*, Hulett's belief which provided the basis for his accusation was formulated within days of the infant's death during the police investigation but prior to commencement of criminal proceedings. Moreover, unlike *Hunt*, because the accusation was made in the privacy of Hulett's home and was inadvertently overheard by a neighbor rather than a statement made during a formal police interview, the accusation did not evince any testimonial purpose. As a result, even more so than *Hunt*, the accusation evidence is not properly characterized as inadmissible opinion testimony regarding Johnson's guilt or innocence.

One case with similar facts, wherein our Supreme Court found that a pretrial statement regarding the defendant's killing of a toddler was not an inadmissible lay opinion but simply an excited response that was admissible at trial, is found in *State v. Mathis*, 281 Kan. 99, 108, 130 P.3d 14 (2006). In *Mathis*, two-year-old C.S. was left at home in the care of the defendant while C.S.'s mother, Ikesia Scruggs, went to work. At the time Scruggs left, C.S. was described as active and energetic with a big appetite. Scruggs returned home in the afternoon, left briefly, and upon her return found Mathis in the shower and C.S. "limp, and his eyes were rolling." 281 Kan. at 102. Scruggs drove

30

C.S. to the emergency room where he was found to have labored breathing, a weak pulse, cyanosis, and, shortly upon admission, he suffered a heart attack. C.S. later died of his injuries. According to our Supreme Court, "C.S. suffered severe internal injuries and internal bleeding. The cause of death was determined to be multiple blunt force blows to the abdomen, delivered with a force comparable to an automobile accident." 281 Kan. at 102.

Mathis was charged and convicted by a jury of felony murder in the death of C.S. On appeal, Mathis claimed the district court erred when Scruggs' mother, Diane Scruggs, was impermissibly allowed to testify at trial regarding her opinion that Mathis was guilty of killing C.S. Our Supreme Court reviewed the merits of Mathis' claim. As described in the opinion:

> "Diane testified that, when she saw C.S. covered with bruises in the emergency
> room, 'I automatically ran out and I ran and held my brother and said that that—I said
> that that goddamned [Mathis] done killed the baby.' Mathis complains that her conclusion
> was pure conjecture and invaded the province of the jury. As the State points out, Diane's
> testimony was her excited response to seeing the injured C.S. rather than about her
> opinion at the time of trial of the defendant's guilt." 281 Kan. at 108.

Our Supreme Court found no error in the admission of the excited pretrial exclamation, and that Mathis' trial attorney was not ineffective by failing to object to this testimony. The conviction was affirmed. 281 Kan. at 109-11.

Like *Mathis*, Hulett's pretrial accusation was a spontaneous, angry, out-of-court statement, and not an opinion on the defendant's guilt akin to trial testimony. Unlike *Mathis,* where the witness had no ostensible basis to support her allegation that the defendant was the killer, as detailed earlier by my colleagues, Hulett had a considerable fund of personal knowledge upon which to base his accusation. In this context, *Mathis*

31

provides even more valuable precedent that Hulett's accusation is not an inappropriate invasion of the jury's province to determine the guilt or innocence of Johnson.

A third Kansas case, *State v. Deiterman*, 271 Kan. 975, 29 P.3d 411 (2001), also provides binding legal authority that a spontaneous, emphatic pretrial statement that a defendant killed a person is not an inadmissible lay opinion that invades the jury's province to determine the guilt or innocence of the defendant.

Deiterman was convicted of capital murder, conspiracy to commit capital murder, and aggravated robbery. The victim, James Patrick Livingston, was killed by two shotgun blasts, one of which was at close range to the back of his head. At trial, the State established the death resulted from a murder-for-hire scheme initiated by Livingston's wife. At trial, one of the coconspirators testified for the State that Deiterman shot and killed Livingston.

The defendant's girlfriend and later wife, Meghan Deiterman, testified at trial and denied that she had spoken with an acquaintance, John Barnes, regarding the defendant's role in the murder. The State then called Barnes as a witness to inquire about Meghan's statement. Deiterman objected to the proposed testimony, claiming "Meghan's opinion of guilt or innocence was irrelevant and highly prejudicial." 271 Kan. at 983. After conferring with counsel outside the presence of the jury regarding the proposed testimony, the district court overruled the objection. As related by our Supreme Court: "The court decided that the answer was not an opinion but rather an emphatic statement. After resuming, the prosecution rephrased the question: 'When you asked her about the murder in Kansas what was her comment, what did she say?' Barnes responded: 'That [Deiterman] blew his damn head off.'" 271 Kan. at 983.

On appeal, Deiterman reprised his objection that his wife's statement was irrelevant opinion testimony and highly prejudicial. Our Supreme Court concluded: "The

32

response is not one of an opinion of guilt or innocence but rather the emphatic positive statement, '[Y]eah, he blew his damn head off.'" 271 Kan. at 984. As a result, the Supreme Court found no error in the district court's admission of the evidence.

*Hunt*, *Mathis*, and *Deiterman* stand for the proposition that an emphatic and/or emotionally charged spontaneous statement made by a witness prior to trial about a defendant's conduct that is later charged as a crime is not an inadmissible lay opinion regarding the guilt or innocence of the defendant.

Fifth, although Hulett testified at the preliminary hearing that Johnson did not admit to killing J.H., his testimony did not indicate whether Johnson denied the accusation or whether she remained silent. To the extent that Johnson remained silent, prejudicial statements made in the defendant's presence and tolerated without resentment, explanation, or denial may be admissible as adoptive admissions under K.S.A. 2019 Supp. 60-460(h)(2).

In order for a defendant's silence to meet the statutory standard for an adoptive admission, the evidence must show: (1) the statement was extrajudicial, (2) it was incriminatory or accusative in import, (3) it was one to which an innocent person would in the situation and surrounding circumstances naturally respond, (4) it was uttered in the presence and hearing of defendant, (5) defendant was capable of understanding the incriminatory meaning of the statements, (6) defendant had sufficient knowledge of the facts embraced in the statement to reply thereto, and (7) defendant was at liberty to deny it or to reply thereto. *State v. Ransom*, 288 Kan. 697, 712, 207 P.3d 208 (2009). Even with the limited record before us, it appears that these seven factors were met, so if, in fact, Johnson did not respond to Hulett's accusation, the accusation evidence would be admissible regardless of whether Hulett's statement is considered opinion evidence.

33

In summary, my colleagues state that "it is not the role of an appellate court to substitute our judgment for the district court's reasonable exercise of its discretion." Slip op. at 18. I agree. But, as set forth above, the district court's ruling in this case was without a proper legal basis which is not a reasonable exercise of judicial discretion but an error of law. See *State v. Brown*, 307 Kan. 641, 644, 413 P.3d 783 (2018) (An appellate court exercises de novo review of a challenge to the adequacy of the legal basis of a district judge's decision on admission or exclusion of evidence.); *State v. Miller*, 308 Kan. 1119, 1166, 427 P.3d 907 (2018) (Whether a particular legal principle or statutory rule governs the admission of particular evidence is a question of law subject to de novo review.). The district court's error of law requires the reversal of the evidentiary ruling excluding the accusation evidence.

THE ACCUSATION EVIDENCE IS NOT MORE PREJUDICIAL THAN PROBATIVE

As the majority points out:

"Following its ruling at the pretrial hearing, the district court also found in its memorandum decision that even if the various evidence relating to Hulett's accusation were otherwise admissible—Hulett's testimony, the neighbor's report, and Johnson's conversation with the FBI agent—the court would nevertheless exclude the evidence because its potential for undue prejudice substantially outweighed its probative value. In particular, the court observed that Hulett's accusation, though of limited probative value, would tempt the jury to short-circuit its fact-finding role and instead convict Johnson because Hulett said she was responsible." Slip op. at 19.

My colleagues forthrightly assess the district court's prejudice analysis "a close question." Slip op. at 20. Upon review, I have a different assessment.

At the conclusion of the preliminary hearing the district court found there were only two possible suspects in the killing of J.H. According to the district judge:

34

"The medical evidence is clear as to the manner and extent to which the child was injured. So the issue comes down to who did it. *As far as I can tell, there's only two people had opportunity. And that was the mother and the father.* [*Hulett*] *and the defendant*. At a preliminary hearing, I don't weigh the credibility of the witnesses. [*Hulett*] *has denied he did it. That leaves only the defendant*." (Emphases added.)

More than 10 months later, however, the district court had an unexpected change of heart. Five days prior to the scheduled jury trial, during a hearing on an unrelated matter, the district court sua sponte announced its intention to preclude the accusation evidence at trial. As the district court later explained in its written memorandum:

"[U]pon analysis, the court believes that this evidence's importance to the [S]tate is not in its high level of relevance, but in its great potential for undue prejudice. The evidence offers *an easy shortcut to a conclusion of guilt* that avoids the difficult process of an analysis of the physical evidence and witness testimony by adopting the *easy two step analysis* offered by the [S]tate, to-wit: Hulett credibly denied his guilt, so the only other suspect must be guilty. How can anyone say that the jury could not fall for *this trap* during their deliberations when this court fell for this same *error in logic* in binding the defendant over for trial at the preliminary hearing[?]" (Emphases added.)

At the outset, while my colleagues highlight "the court's deliberative analysis and thoughtful conclusion," slip op. at 18, I am convinced the district court again erred as a matter of law in failing to engage in any meaningful weighing of the probative and prejudicial aspects of the accusation evidence.

By way of analogy, our Supreme Court in *Gunby*, 282 Kan. at 49, enunciated a three-part test to be used in evaluating the admissibility of prior crimes evidence under K.S.A. 60-455. The third part of the test used by the district court provides that if the fact to be proven was material and the evidence was relevant to prove a disputed material fact, the district court must determine whether the risk of undue prejudice to the defendant

35

substantially outweighs the probative value of the evidence. See *State v. Satchell*, 311 Kan. 633, 644-45, 466 P.3d 459 (2020) (clarifying that despite prior shorthand references omitting the word "substantially," that the risk of undue prejudice must "substantially outweigh" the probative value of the evidence).

Our Supreme Court recently articulated an analytical framework for analyzing whether K.S.A. 60-455 evidence is more probative than prejudicial. In particular, the Supreme Court found:

> "In evaluating the possible prejudicial effect of evidence of other crimes or civil wrongs, the district court should consider, among other factors:  the likelihood that such evidence will contribute to an improperly based jury verdict; the extent to which such evidence may distract the jury from the central issues of the trial; and how time consuming it will be to prove the prior conduct.'" *State v. Claerhout*, 310 Kan. 924, 930, 453 P.3d 855 (2019) (quoting *State v. Boysaw*, 309 Kan. 526, 541, 439 P.3d 909 [2019]).

Upon my review of the district court's oral and written pronouncements in this matter, I can find nothing to show the district court engaged in any particularized weighing of the prejudicial effect of the accusation evidence, similar to weighing factors our Supreme Court established in the context of K.S.A. 60-455 evidence. On the contrary, the district court simply and briefly stated there would be undue prejudice because admission of the accusation evidence would be "an easy shortcut to a conclusion of guilt" based on an "error in logic." Similar to *Claerhout*, "the district court's stated reasoning was so abbreviated that we cannot determine what factors, if any, it considered in reaching its conclusion." 310 Kan. at 930.

Neither the district court nor my colleagues explain the "error in logic," "easy shortcut," or "trap" the district court found that was unduly prejudicial. On the contrary, the logic is simple, rational, and compelling:  Suspect A and Suspect B are at the crime scene where an infant is killed. Based on expert medical and forensic testimony, Suspect

A and Suspect B are the only possible killers. Suspect A testifies at trial, with corroboration from a neighbor, that shortly after the infant's death he angrily accused Suspect B of killing the infant. After evaluating all the trial evidence, the jury finds there were only two suspects in the killing, and that Suspect A is a truthful witness. Based on this evidence, is it not logical or reasonable for the jury to deduce that Suspect B killed the infant?

The only basis the district court gave for concluding the accusation evidence had "great potential for undue prejudice" is that "[t]he evidence offers an easy shortcut to a conclusion of guilt that avoids the difficult process of an analysis of the physical evidence and witness testimony." This explanation is inexplicable.

Only evidence that actually or probably brings about the wrong result under the circumstances of the case is unduly prejudicial. *State v. Richmond*, 289 Kan. 419, 438, 212 P.3d 165 (2009). Without the jury's consideration of the physical evidence (radiographic slides, photographs of the interior of the house showing J.H.'s bedding and baby bottle; the autopsy report with photographs, diagrams, and measurements of the infant's external and internal injuries) and witness testimony (expert medical and forensic opinions by doctors and nurses; testimony by investigating police officers and Hulett) the accusation evidence is of little weight in tending to prove that Johnson killed J.H. That's because the physical evidence and witness testimony provide the essential foundation— time, place, opportunity, suspects, manner of death—for the jury to conclude that only Johnson or Hulett or both committed the crime. In essence, the accusation testimony is not "an easy shortcut" but, on the contrary, demands that the jury travel a long and involved evidentiary road and carefully consider whether the physical evidence and witness testimony supports or undermines the State's "two suspects" theory.

Moreover, the district court's concern about an "error in logic" or "trap" if the accusation evidence is admitted at trial, if true, would also preclude any trial testimony by

37

Hulett denying that he killed J.H. That's because, under the circumstances of this case, whether the State tends to show that Hulett did not kill J.H. by introducing the accusation evidence or by having Hulett testify in court that he did not kill his daughter, the inferences from the evidence are identical: Since Hulett did not kill J.H., Johnson must have killed J.H. Employing the district court's reasoning regarding a purported error in logic, if Hulett simply and credibly testifies in court that he did not kill J.H., it follows that the jury also would be trapped and ignore the physical evidence and other witness testimony and simply convict Johnson solely based on Hulett's sworn trial testimony. In other words, based on the district court's reasoning, because of undue prejudice Hulett should not be allowed to testify in court that he did not kill J.H.! Quite simply, the district court's reasoning makes no sense.

Because the district court's ruling did not explain or show that the risk of undue prejudice to the defendant substantially outweighed the probative value of the evidence, this failure is another error of law which requires reversal of the ruling.

### THE ACCUSATION EVIDENCE BY MATT BROWN IS ADMISSIBLE

The district court ruled that "Mr. Brown's testimony is hearsay and that it only becomes admissible because Schuyler Hulett is available to testify AND THE COURT ORDERS Mr. Brown's proposed testimony is inadmissible at trial because of the Court's ruling herein on Schuyler Hulett's proposed testimony."

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible [unless an exception applies]." K.S.A. 2019 Supp. 60-460. Whether K.S.A. 2019 Supp. 60-460(a) exempts the hearsay use of the statement turns on the district court's determination of the admissibility of the accusation as discussed earlier in this dissent, because to qualify under this exception, the statement must be admissible if it

38

were made by the declarant while testifying as a witness. Consistent with my earlier analysis, if Hulett and Brown testify at trial that Hulett made the accusation which Brown overheard—and the accusation is offered to prove the truth of the matter asserted—there is no hearsay problem precluding Brown's testimony.

Additionally, if a party offers a statement for reasons other than to prove the truth of the matter stated, the statement is not hearsay and it is admissible like any other relevant evidence. *State v. McKissack*, 283 Kan. 721, 736, 156 P.3d 1249 (2007). A statement is not hearsay if it is used circumstantially as giving rise to an indirect inference but not as an assertion to prove the matter asserted. *State v. Randle*, 311 Kan. 468, 476-77, 462 P.3d 624 (2020).

In the district court's view, Brown's account of the accusation is inadmissible hearsay, in part, because it is offered to prove the truth of the matter asserted that Johnson killed the infant. But the district court did not acknowledge that Brown's account of the accusation is not hearsay when used to establish the indirect inference that Hulett did not kill the infant. Under the later purpose, the evidence is admissible.

JOHNSON'S DENIAL THAT HULETT ACCUSED HER
OF KILLING J.H. IS ADMISSIBLE EVIDENCE

Finally, the State appeals the exclusion of evidence that during an interview with FBI Agent Velazco, Johnson denied that Hulett ever accused her of killing their baby. As the district ruled on this issue:

> "The [S]tate seeks to introduce evidence that Johnson denied to an investigating FBI agent that she and Hulett had an argument wherein he accused her of having killed his baby. The [S]tate suggests that this lie shows that Johnson was not truthful in her statements to law enforcement officers in regard to the killing of her child. As evidence of the defendant's dishonest character, this evidence is inadmissible under K.S.A. 60-422 (c) and (d)."

39

On appeal, as it did in the district court, the State asserts that K.S.A. 60-422(d) is inapplicable because the State is not offering evidence of specific instances of conduct relevant only to tending to prove a trait of Johnson's character. On the contrary, the State contends it is offering this evidence as substantive evidence "because the credibility of statements made by two parents of a baby who has been killed to law enforcement [is] relevant for the jury when determining the reliability of versions of the story of how the baby died."

My colleagues implicitly find that the district court's reason for excluding this evidence under K.S.A. 60-422(d) is misguided. Slip op. at 21. In particular, they cite the Advisory Committee Notes to the 2003 Amendment to Rule 608 of the Federal Rules of Evidence which state that proof of specific instances of a witness' untruthfulness may be considered for grounds other than character, such as bias or prejudice. Slip op. at 21. That, of course, is the reason the State asserts the accusation evidence is admissible.

K.S.A. 60-420 provides:

"Subject to K.S.A. 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the issues of credibility."

K.S.A. 60-422(d), in turn, restricts the manner of proving a witness' character traits by disallowing evidence of specific instances of the witness' conduct which are relevant only to the witness' character trait. Further, when a person's character trait tends to prove conduct on a specified occasion, the trait may not be proven with evidence of specific instances of conduct other than prior convictions. K.S.A. 60-447(a).

40

Evidence may be admitted for a proper purpose, however, even though it may be inadmissible for some other purpose. K.S.A. 60-406 (recognizing admissibility of relevant evidence for limited purpose). "So evidence that would be inadmissible to prove a general character trait of the witness may be admitted if it would otherwise be relevant either as bearing on the witness' credibility or for some other purpose." *State v. Bollig*, No. 120,398, 2020 WL 3566537, at *6 (Kan. App. 2020) (unpublished opinion).

I agree with my colleagues that proof of specific instances of a witness' untruthfulness may be considered for grounds other than character, such as bias or prejudice. Indeed, bias and prejudice are commonly thought of as reasons that people skew their account to favor one party (bias) or to discredit the other (prejudice) based on some individualized like or dislike of that party. But a person's reason to provide false information need not be so personalized, and admissible bias or prejudice may include any distinct motive to lie. *Bollig*, 2020 WL 3566537, at *7; *Longus v. United States*, 52 A.3d 836, 850 (D.C. App. 2012) (bias includes witness' personal disposition for or against a party and any distinct motive to lie). Particularly relevant to this appeal, otherwise inadmissible evidence may be admitted to demonstrate a defendant's state of mind or motive when providing information to police. *McKissack*, 283 Kan. at 738.

Kansas law has long held that false, exculpatory statements made by a defendant are admissible to show a consciousness of guilt and unlawful intent. In *State v. Norwood*, 217 Kan. 150, 535 P.2d 996 (1975), Norwood and a codefendant were charged with burglary and theft. Norwood testified at trial, was convicted of theft, but was granted a new trial. In the second trial, during its case-in-chief, the State introduced Norwood's testimony from the first trial regarding his whereabouts at the time of the crime. A detective then testified to statements Norwood made to him regarding his whereabouts at the time of the crime, which were contrary to Norwood's testimony in the first trial. Norwood was convicted.

41

On appeal, Norwood claimed this procedure constituted improper impeachment. Our Supreme Court disagreed and upheld the admissibility of both statements:

> "In view of the fact these statements were inconsistent, we believe it was relevant as tending to show defendant's guilt. False exculpatory statements made by a defendant are admissible to show a consciousness of guilt and unlawful intent. (*United States v. Tager*, 481 F.2d 97 (10th Cir. 1973). In an early Kansas case this court stated:
>
>> "'. . . It is always competent to show the statements and claims made by a person charged with crime with reference thereto, and to show that such statements are false. *The fact that a defendant in a criminal case resorts to falsehood is a circumstance which may, in connection with other facts in the case, tend to prove guilt.*'" (Emphasis added.) *Norwood*, 217 Kan. at 155 (quoting *State v. Oliver*, 55 Kan. 711, 714, 41 P. 954 [1895]).

See *State v. Chandler*, 307 Kan. 657, 672, 414 P.3d 713 (2018) ("Her inconsistent statements also constitute suspicious post-murder conduct demonstrating consciousness of guilt.").

Applying this precedent to the issue on appeal, Johnson's denial of Hulett's accusation to Agent Velazco shows that she was willing to provide false information to authorities regarding evidence implicating her in the murder of her daughter. This demonstrable willingness to lie about inculpatory evidence reveals Johnson's consciousness of guilt when providing information to authorities and is a form of bias separate and distinct from any general character trait of dishonesty. Given the State's purpose in offering this accusation testimony, the district court made an error of law in disallowing it under K.S.A. 60-422(d).

Despite the district court's legal error, my colleagues find that

> "this evidence is predicated on [the State's] ability to discuss—*and an assumption of the accuracy of*—Hulett's accusation. And even if evidence of Johnson's interview with the FBI agent were otherwise admissible, the district court found that such evidence . . . was

42

inadmissible because the probative value of Hulett's accusation was substantially outweighed by its potential for undue prejudice." (Emphasis added.) Slip op. at 22.

My colleagues are mistaken.

First, as to Agent Velazco's testimony that Johnson denied that Hulett made the accusation, the truth or accuracy of the accusation is irrelevant. Whether Hulett's accusation is true or not, the probative quality of the evidence is that although Hulett testified the accusation was made and it was overheard by Brown, when asked about it by Agent Velazco, Johnson denied that any accusation was ever made against her. Herein lies the probative nature of this particular evidence—it establishes Johnson's consciousness of guilt—separate and apart from the truth of Hulett's allegation. A limiting instruction from the district court could inform the jury of the limited purpose of this evidence.

On the other hand, as discussed earlier, the accusation evidence proven through the testimony of Agent Velazco is highly probative and admissible for the truth of the matter asserted, that Johnson killed J.H., or for the collateral purpose to show that Hulett did not kill the baby. Under either rationale—and separate from admitting the accusation evidence through Agent Velazco to prove Johnson's consciousness of guilt—the evidence is admissible through Agent Velazco.

Finally, and contrary to the majority's finding, the district court did not conduct any analysis of whether the risk of undue prejudice to the defendant substantially outweighed the probative value of the evidence in the specific context of Agent Velazco's testimony that Johnson lied to him about the accusation ever being made. This is another error of law.

43

CONCLUSION

It has been stated:

"'The jury 'is a central foundation of our justice system and democracy.' *Pena-Rodriguez v. Colorado*, 580 U.S. __, 137 S. Ct. 855, 860, 197 L. Ed. 2d 107 (2017). We rely on jurors to observe witnesses' demeanor, to listen to their testimony, and to weigh the evidence presented in the context of each party's arguments to determine what versions of events are credible. And once jurors have been instructed on the law, we trust them to apply that law to the facts and render a verdict." *State v. Olsman*, 58 Kan. App. 2d 663-64, 473 P.3d 937 (2020) (Warner, J., concurring in part and dissenting in part).

As described above, our jury system is a remarkable expression of a free and democratic society, predicated on the rule of law and empowered by individual citizens who, under the guidance of a judge, collectively determine the guilt or innocence of criminal defendants.

But our jury system is undermined when a district judge erroneously prevents the jury from considering relevant evidence that is important to a just verdict. Here, the district court's ruling, from its sua sponte inception to its flawed reconsideration, invades the province of the jury by withholding from its consideration admissible evidence that is probative of Johnson's guilt or innocence in the killing of J.H. The jury, properly instructed, is fully capable of applying Kansas law, assessing the truth of the evidence—including the accusation—and arriving at a verdict regarding whether Johnson is criminally liable for her daughter's death.

I would reverse the district court's sua sponte ruling and, under these unique circumstances, remand with directions for the district court to conduct an evidentiary hearing and reconsider the admissibility of the accusation evidence by properly applying Kansas law as discussed in this dissenting opinion. In the event the district court rules

44

that the accusation evidence is admissible only for one or more limited purposes, the court should prepare a limiting instruction to inform the jury of the specific purpose(s) for which the evidence is admitted.